530 P.2d 1149

Maude E. **LOEBECK**, Plaintiff-Appellant,

v.

The **IDAHO STATE BOARD OF EDUCA-TION** as trustee for Idaho State University and William E. Davis, President of Idaho State University, Defendants-Respondents.

No. 11378.

Supreme Court of Idaho.

Jan. 10, 1975.

Vern E. Herzog, Jr., Pocatello, for plaintiff-appellant.

Herman J. McDevitt of McDevitt & McDevitt, Pocatello, for defendants-respondents.

SHEPARD, Justice.

This is an appeal from a judgment of the district court adverse to plaintiff-appellant in an action wherein she, a former member of the faculty of Idaho State University, sought a determination of faculty tenure, reinstatement as a faculty member, a determination of contract rights and damages. We affirm in part and reverse in part.

Plaintiff-appellant Maude Loebeck was initially employed as a faculty member at Idaho State University in the year 1966 under a one year contract. Her official status was that of a non-tenured faculty member. She was also re-employed under a one year contract in each of the succeeding four years. By letter dated February 26, 1971, the academic vice-president informed appellant that she would be offered a contract for the following academic year (August 23, 1971 to May 23, 1972), but that the contract would be "terminal" and that she would not be rehired thereafter. On March 12, 1971, William E. Davis, President of the University, also wrote appellant a letter setting forth the same information but in greater detail.

Appellant was never informed of the reasons for her nonre-employment after the period of time of the "terminal" contract. No hearing was held thereon. On April 1, 1971, appellant received a form of contract for the following academic year, August 23, 1971 to May 23, 1972, which was labeled "terminal appointment." She signed that contract and returned it accompanied by a letter from her attorney advising that by signing the proffered contract she was not waiving or releasing any claim she might have in regard to tenure. Upon receiving the returned contract and its accompanying letter the University advised appellant that by accepting the contract she waived any claim she may have to tenure. She thereafter refused to comply with the contract and brought the instant action.

Appellant claimed that her constitutional rights were violated on the basis that she was denied due process, asked the court to determine that she was entitled to tenure, that she be reinstated as a faculty member, that her contractual rights were violated, and that she be awarded damages. Following trial the district court entered findings of fact, conclusions of law and judgment wherein all relief was denied to plaintiff-appellant.

Appellant argues initially that she was denied liberty and/or property without due process of law in violation of the Fourteenth Amendment of the United States Constitution. Heavy reliance is placed upon Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) and Board of Regents of State Colleges v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Those cases decided by the United States Supreme Court on the same day treat the issue of due process rights, if any, accruing to a public teacher upon termination of employment.

In both *Perry* and *Roth* the key issue was whether those plaintiffs had property or liberty interests in the expectation of

re-employment so as to trigger the due process clause. As was stated in *Roth,* only if such an interest exists need a teacher be given procedural safeguards prior to termination of employment. The court in *Roth* said: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Roth, supra,* 408 U.S. at 577, 92 S.Ct. at 2709. The court in *Roth* found that the teacher's employment which was on a year to year basis secured no interest in continued employment. The court also stated: "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." 92 S.Ct. at 2709. As was stated by Burger, C. J., concurring in *Roth,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, before appellant herein can be found to have a property interest she must have a "right to re-employment under state law, arising from either an express or implied contract * * *" 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570.

■ In the case at bar the trial court found that the conferring of tenure at Idaho State University required an affirmative act by the University administration. That finding is supported in the record. It is undisputed in the record that the administration has never affirmatively granted appellant a tenure status and she was informed that she was not granted tenure. We therefore deem it clear that appellant had not gained the status of a tenured faculty member at the University. Hence appellant's position is in sharp contrast with that of the plaintiff in Perry v. Sindermann, *supra,* and although she contends that the lower court should have required the University to grant her tenure status it is clear that the lower court was correct in its refusal.

■ A nontenured teacher has no constitutional right to a statement of reasons or a hearing on a university decision not to rehire. To rule otherwise would violate the purpose of having a probationary period before tenure permitting a university to evaluate a teacher with no obligation to rehire. Frazier v. Curators of University of Missouri, 495 F.2d 1149 (8th Cir. 1974); Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971); cert. den. 408 U.S. 943, 92 S.Ct. 2847, 33 L.Ed.2d 767 (1972).

■ Nothing in the terms of the year to year contracts entered into between appellant and the University or in any state statute or university rule or policy conferred on appellant any legitimate entitlement to tenure. She had nothing more than a hope of receiving tenure. "That hope is not a property right and the frustration of such a hope does not trigger the right to a hearing * * *" Perrin v. Oregon State Board of Education, 515 P.2d 409 (Or.1973); *See also* Board of Regents v. Roth, *supra.* Although appellant had been rehired in consecutive years that did not change her nontenured status. She had only come closer to the time at which a decision had to be made as to granting or non-granting of tenure. Blair v. Board of Reg. of State Univ. & Com. Col. Sys., Tenn., 496 F.2d 322 (6th Cir. 1974).

■ Appellant has also argued that she had a "liberty" interest protected by the due process clause of the Constitution of the United States. In the case at bar as in Board of Regents v. Roth, *supra,* no charge was made against appellant that might damage her standing or association in the community and there is no suggestion that any stigma or other disability was imposed which foreclosed freedom to take advantage of other employment opportunities. No charges were made against appellant and as emphasized by the trial court the merits of the University decision were not at issue at trial. We therefore find that appellant was deprived of no liberty interest which is constitutionally protected. Board of Regents v. Roth, *supra.*

Since appellant was deprived of no constitutionally protected property or liberty interest it follows that she has no right to a hearing, and cases involving hearing requirements such as Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) are inapplicable here. In the case at bar and in similar situations there is no obligation upon the University to provide its reasons for non-renewal. Board of Regents v. Roth, *supra;* Perrin v. Oregon State Board, *supra.* In view of the foregoing discussion the decision of the trial court relating to tenure and refusing to reinstall as a faculty member are affirmed.

■ We turn now to appellant's contention that as a contractual matter she was given insufficient notice of non-renewal. It was stipulated at trial that the University had followed all the procedural requirements with the exception of the sufficiency and timeliness of notice. The record is clear that appellant was furnished adequate and sufficient notice expressly and clearly explaining that appellant was offered a final one year contract and thereafter she would not be employed. Appellant's contention regarding adequacy of notice is therefore without merit and the decision of the trial court in that regard is affirmed.

Appellant also asserts that the notice of non-reappointment was not timely given. The district court found "that notice of termination of employment was given to the plaintiff sixteen and one-half months prior to the expiration date of her *proffered terminal contract.* * * *" and further found "that as a practical matter, it would be impossible to give more extensive notice to anyone such as plaintiff serving under a year to year contract." (Emphasis added) Regrettably such findings by the trial court were not dispositive of the issue of whether the University breached its contract with appellant.

There is no dispute between the parties but that appellant was hired on a contractual year to year basis. Each of said

contracts is before us and is a simple printed one page document. It is obvious that such contracts do not purport to set forth the entire contractual agreement between the parties. Both parties appear to tacitly agree that such is the case but disagree as to what other documents, if any, contain additional terms and conditions of appellant's employment. The parties hereto variously assert that one or more of the following documents are relevant: 1940 Statement of American Association of University Professors (AAUP) and Faculty and Staff Handbook issued by Idaho State University in 1964, and Faculty and Staff Handbook issued by Idaho State University in 1967. All those documents are in evidence and are before us. The 1940 AAUP Statement and the 1964 University Handbook appear applicable only to appellant's contentions regarding tenure.

Inferentially at least the trial court in its findings of fact took notice of the provisions of the 1967 edition of the Faculty and Staff Handbook issued by Idaho State University. The trial court made no finding as to whether the Faculty and Staff Handbook of 1967 constituted any part of the contracts negotiated between appellant and respondent University following the issuance of that Handbook. It is admitted that on September 8, 1967 the Idaho State Board of Education adopted a "policy statement on academic freedom, tenure and academic due process in dismissal and termination." That policy was contained in the said Faculty and Staff Handbook of 1967, which was circulated and made available to the faculty and staff personnel of Idaho State University. The pertinent portion of said statement provides:

"C. Standards for Non-Reappointment

Notice of non-reappointment will be given in writing and in accordance with the following standards:

"1. Not later than March 1 of the first academic year of service if the

appointment expires at the end of that academic year, or if a one-year appointment terminates during an academic year, at least three months in advance of its termination.

"2. Not later than December 15 of the second academic year of service if the appointment expires at the end of that year; or, if the appointment terminates during an academic year, at least six months in advance of its termination.

"3. *At least twelve months before the expiration of an appointment after two or more years in the institution."* (Emphasis supplied)

■ The trial court evidently believed that the twelve month notice was applicable in the case at bar since in its finding it determined that the appellant had received sixteen and one-half months notice of non-reappointment. We do not specifically rule on this matter since the trial court made no finding of fact regarding the applicability of the 1967 Faculty and Staff Handbook to the contract rights of the appellant. The case will be remanded to the trial court for such a finding of fact.

■ Assuming but not deciding that the 1967 Handbook is relevant and applicable to a determination of appellant's contract rights, further consideration of the trial court's rulings become necessary. As noted, the trial court found that appellant received notice of termination of appointment sixteen and one-half months prior to the expiration date of her "proffered terminal contract." It is obvious that the trial court reasoned that appellant had no right to refuse the "proffered" contract and that in so doing she waived any right to continued payment of salary beyond the four and one-half months remaining in the life of her then existing contract. With this we disagree. In our view, assuming that her contract rights were determined

by the 1967 Handbook, she was entitled to be notified twelve months "before the expiration of an appointment." Her appointment under which she was then operating expired on June 5, 1971. She was entitled to salary for twelve months following said notice. The fact that the University offered her a contract which would result in salary being paid to her for at least twelve months following her notice cannot be dispositive since such proffered contract was conditional and would only be effective if she agreed to waive other rights which she may or may not have possessed.

The respondent University cannot on the one hand make a promise to an employee in connection with contract negotiations (if indeed the trial court finds that the handbook was a part of the contract negotiations) that the employee will continue to be employed unless otherwise notified twelve months in advance of termination; and on the other hand claim that the employee has waived such notice requirement because it tendered a final year's contract on a conditional basis that required the employee to forego other claims. In short, appellant here either had a contract of employment which required the University to continue salary payments for twelve months following termination notice or she did not. If she had such a contract right and the University correlatively had such a contract duty the University could not breach its duty by changing the terms of the agreement in midstream.

Although listed in the pretrial order as one of the issues, the trial court made no finding regarding the question of damages suffered by appellant. From the discussion it is clear that appellant was terminated only four and one-half months following notice. If the trial court finds that the twelve month notice of termination was part of the contract terms and conditions, the trial court is directed to deter-

mine the damages, if any, suffered by appellant on the basis of seven and one-half months non-payment of salary with due consideration to other factors such as mitigation of damages which may bear on that question.

The matter is reversed in part and remanded to the trial court to take additional evidence if deemed necessary, and thereafter make its findings regarding the applicability of the 1967 Faculty and Staff Handbook of the Idaho State University to the contract rights and duties between appellant and respondent University and on the question of damages. Thereafter judgment shall be entered in accordance herewith. Costs to appellant.

McQUADE, C. J., and DONALDSON, McFADDEN and BAKES, JJ., concur.