**Robert C. HALL, Plaintiff,**

**v.**

**John SWARTLEY, Janet Hay, J. Clint Hoopes, Leno P. Seppi, Cheryl Hymas, A. L. Alford, Jr., J. P. Munson, Roy Truby and Richard E. Bullington, Defendants.**

**Civ. No. 78–1173.**

United States District Court, D. Idaho.

Sept. 21, 1978.

William C. Roden, Roden & Weston, Boise, Idaho, for plaintiff.

Wayne L. Kidwell, Idaho Atty. Gen., J. Charles Blanton, Loren C. Ipsen, Moffatt, Thomas, Barrett & Blanton, Boise, Idaho, for defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

CALLISTER, District Judge.

Plaintiff moves this Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, to enjoin defendants from dismissing, terminating, or in any way interfering with

his employment with Boise State University ("BSU") during his action against defendants.

The Court, having reviewed all matters of record and having received oral arguments and witness testimony finds the following facts to be undisputed or uncontroverted:

1. Plaintiff Robert C. Hall was employed as the Director of Information Services, BSU, from July 1, 1974, to June 30, 1978.

2. Plaintiff was considered a professional staff employee under the direct supervision of the President of BSU.

3. Plaintiff's contract of employment was subject to yearly renewal or nonrenewal.

4. Defendant Richard E. Bullington ("Bullington"), Interim President of BSU and direct supervisor of plaintiff, received several oral complaints from faculty and staff relating to plaintiff's job performance.

5. Said complaints ultimately caused Bullington to meet with plaintiff on or about February 10, 1978. The apparent disenchantment expressed by faculty and staff was discussed and it was pointed out to plaintiff "that if such disenchantment persisted, his job would become difficult . . . ." Recommendations were made to hopefully counter the problems.

6. The University Information/Mass Communication Standards Committee, created pursuant to BSU Policy 50–20, solicited comments from faculty and administrators concerning the University's public image. Many letters received in response voiced problems with the Office of Information Services and its Director, plaintiff Hall.

7. Bullington continued to receive critical comments and correspondence concerning plaintiff's performance as Director of Information Services.

8. After plaintiff's comments appeared in *The Idaho Statesman* concerning Dean William J. Keppler's recruiting memorandum, Bullington received additional negative comments and correspondence with respect to plaintiff.

9. Bullington also received some laudatory communications concerning plaintiff's job performance.

10. Bullington met with plaintiff on March 22, 1978, for a performance evaluation meeting. Bullington discussed concerns which had been expressed both about plaintiff's performance of his employment responsibilities and about the public perception of BSU. Plaintiff was provided opportunity to respond in detail. No decision as to plaintiff's status was reached during said evaluation.

11. During the week following the evaluation conference with plaintiff, Bullington consulted approximately eleven individuals concerning their observations of plaintiff's job performance and working relations with faculty and staff. Among the individuals consulted were the Deans of all schools at BSU, two of three vice-presidents, the Director of Vocational-Technical Education, several faculty members, including Professor Wright, Dr. Hill, Dr. Tucker and Professor Atkins and the University sports information director, Mr. Fouche.

12. When asked if plaintiff could be effective in the position of Director of Information Services if he remained at BSU, the above mentioned individuals responded uniformly and emphatically in the negative.

13. Based upon his evaluation and reviews, Bullington concluded that plaintiff had lost effectiveness as the Director of Information Services and that it would be in the best interest of BSU that his contract of employment not be renewed.

14. Upon making the determination that plaintiff's employment contract should not be renewed, Bullington completed a written performance review form relative to plaintiff's job performance.

15. Bullington personally delivered notice of nonrenewal to plaintiff on March 29, 1978.

16. Plaintiff, within 30 days, requested and was granted a meeting with Bullington.

17. Within five days of said meeting, plaintiff requested a hearing before the State Board of Education.

18. Plaintiff was granted a hearing before the Board on June 1 and 2, 1978, but was allowed to raise procedural errors only concerning his pending nonrenewal. By a three-to-two vote, the Board determined that plaintiff was not entitled to a hearing relating to the merits of his nonrenewal.

■ Upon a motion for preliminary injunction, the burden is upon the plaintiff and requires a showing that:

(1) the significance of the threat of irreparable harm to plaintiff if the injunction is not granted;

(2) the state of the balance between this harm and the injury that granting the injunction would inflict on defendant;

(3) the probability that plaintiff will succeed on the merits; and

(4) the public interest.

Wright & Miller, *Federal Practice & Procedure: Civil*, § 2948, pp. 430–431 (West 1973), and cases cited therein.

■ Accordingly, plaintiff must first show that should an injunction not issue he will suffer irreparable harm. The Court agrees with defendants in that plaintiff's harm is real, but it cannot be said that such harm is "irreparable" because should plaintiff prevail, he could be rehired and receive lost wages.

The second requirement, plaintiff must tip the balance in his favor between the harm to plaintiff and the injury that granting the injunction would inflict on defendants. Since plaintiff's employment contract has already expired, the Court would not be maintaining the status quo by granting a preliminary injunction; rather, it would be using injunctive powers to force re-establishment of an estranged employer-employee relationship.

It is the opinion of this Court that such a reinstatement of plaintiff *pendente lite* would result in far greater injury to defendants than the harm suffered by plaintiff. It cannot be conducive to the smooth functioning of the University to compel reinstatement of an employee who was not rehired under rather acrimonious circumstances and whose ability to work with colleagues is seriously in doubt. Similar reasoning would apply to the role of public interest in injunctive procedures. The public interest in the efficient operation of a state university militates in favor of declining to reinstate plaintiff *pendente lite*.

Thirdly, plaintiff must establish a probability of success on the merits. Plaintiff concentrates most of his efforts on the establishment of this element of his burden. Therefore, the Court will treat this element more exhaustively.

■ Plaintiff's first contention is that he possessed a "property interest" in his employment at Boise State University. Plaintiff, however, does not claim to have been tenured or to have possessed any employment rights other than a series of one-year employment contracts which might constitute "property interests." The very policies of Boise State University upon which plaintiff relies, *viz.*, Policies 55–15 and 55–15A, make it clear that all administrative one-year employment contracts are subject to annual renewal or nonrenewal. Nothing in the terms of plaintiff's contracts themselves or in the University policies could give rise to the "objective expectation of continued employment," i.e., a "property interest" required by *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); and *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). On the contrary, BSU Policy 55–15 clearly and unambiguously states:

Professional staff are on one-year appointments as are all administrative employees of the University. Notice of nonrenewal of professional staff must be provided in writing a minimum of three months prior to the termination of each annual contract. This notice of nonrenewal does not include coaches, assistant coaches and special lecturers.

Presumably, plaintiff "hoped" to have his contract renewed. But the latest pronouncement of state law in Idaho on the subject, *Loebeck v. Idaho State Board of Education*, 96 Idaho 459, 530 P.2d 1149 (1975), suggests that " 'hope is not a property right and the frustration of such a hope

does not trigger the right to a hearing.'" *Id.* at 1151.

The University at all times had the right to elect not to renew plaintiff's contract, provided that proper written notice was given. Such notice was timely given in this case.

■ Plaintiff next alleges that BSU could not decline to renew his contract without proving cause against him and without instituting a hearing process. This Court disagrees. The law is clear in Idaho that a university may decline to renew the contract of a nontenured employee for any reason or for no reason at all, provided that the reason is not constitutionally impermissible. In the context of a nontenured teacher, the Idaho Supreme Court stated the following in the case of *Loebeck, supra*, 96 Idaho 459, 461, 530 P.2d 1149, 1151 (1975):

> A nontenured teacher has no constitutional right to a statement of reasons or a hearing on a university decision not to rehire. To rule otherwise would violate the purpose of having a probationary period before tenure permitting a university to evaluate a teacher with no obligation to rehire. (Citations omitted)

Similarly, a nontenured administrator has no right to a statement of reasons or a hearing on a university decision not to rehire him. A contrary rule would violate the purpose of having a one-year employment contract allowing a university to evaluate an administrator annually.

■ Plaintiff, however, claims that BSU Policy 55–12 entitles him to a grievance hearing. He relies on the language which in part provides:

> Grievances may include, but are not necessarily limited to, annual leave, sick leave, dismissal, suspension, involuntary transfer, promotions, demotions, and discrimination relative to sex, race, religious affiliation, and handicapped status. Policy 55–15.

The Court disagrees with plaintiff's construction of Policy 55–15. Under Idaho law, BSU would not be obligated to rehire plaintiff so a grievance hearing would be meaningless. The Court also recognizes the

deference to which university administrative decisions are entitled. Finally, plaintiff was given an opportunity to meet informally with the Interim President of the University to review substantively the decision not to renew his contract and was further permitted to appeal the procedural aspects of the nonrenewal to the State Board of Education, which upheld the action of the Interim President. The Court agrees that since the University is not required to prove good cause in regard to the nonrenewal of an annual employment contract, the only proper subject of inquiry in an administrative proceeding is whether the procedural requirements relating to nonrenewal were met.

■ Finally, plaintiff argues that his contract was not renewed for constitutionally impermissible reasons; namely because of his purported exercise of the right of free speech.

The Court concludes, after reviewing all the evidence that defendant Bullington's decision not to renew plaintiff's contract was not made arbitrarily or in retaliation for any asserted exercise of free speech. The uncontroverted facts are clear that complaints concerning plaintiff's job performance were received by the Interim President both before and after plaintiff's remarks to the press in March 1978.

A review of the exhibits and other evidence as a whole reveals that many complaints were received by the Interim President relating to such matters as plaintiff's procrastination, the delays encountered by those working with his office, plaintiff's failure to secure news coverage for University events, the poor layout and design of plaintiff's graphic materials, the failure of plaintiff to provide accurate information in news releases, plaintiff's poor rapport with faculty members and other job-related deficiencies.

The Court finds that negative response by some faculty members to plaintiff's press statements was merely the precipitating factor which led Bullington to make a closer examination of plaintiff's job performance. Only after a more than generous and careful review, which included not

only his personal observations but interviews with many faculty members and administrators not in any way involved in previous complaints concerning the plaintiff and a conference with plaintiff himself, did the Interim President, Bullington, conclude that it would be in the best interests of the University if plaintiff's employment contract were not renewed.

The Court finds it unnecessary to reach the issue of whether or not plaintiff's speech even rose to the level of constitutionally protected speech. In short, the Court concludes that plaintiff fails to establish a probability of success on the merits.

The Court concludes, therefore, that plaintiff has failed to carry the burden of proof so as to be entitled to a preliminary injunction by the clear and convincing margin required before an injunction will issue.

NOW, THEREFORE, IT IS HEREBY ORDERED that plaintiff's motion for preliminary injunction be, and the same is hereby, DENIED.