Martha SACCHINI, Plaintiff and Appellant,

v.

DICKINSON STATE COLLEGE, Defendant and Appellee.

Civ. No. 10367.

Supreme Court of North Dakota.

Aug. 10, 1983.

Daniel J. Chapman [argued], of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Ward M. Kirby [argued], of Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellee.

PAULSON, Justice.

This is an appeal by Martha Sacchini from a judgment[1] that dismissed her complaint against Dickinson State College [the College]. We affirm.

Sacchini was employed as a library science instructor at the College from the fall of 1974 through the spring of 1980 on an annual contract basis with each contract running for approximately nine months. Each of the six form contracts Sacchini signed contained a general provision stating that the employee was required to comply with "all rules, regulations and policies of ... [the College] and the State Board of Higher Education". Each contract also contained a special typewritten provision stating that the contract was a "terminal contract".[2]

---

1. Although the notice of appeal states that Sacchini appeals "from the Order for Judgment entered in this action on the 20th day of December, 1982", we assume that Sacchini, instead, appeals from the judgment, and not from the order for judgment, as the judgment was dated and filed in the clerk's office on December 20, 1982. An order for judgment is not an appealable order. See § 28–27–02, N.D.C.C.; *Storebo v. Foss*, 325 N.W.2d 223, 224 n. 1 (N.D.1982).

2. The contracts Sacchini signed contained the following special conditions:

| | |
|---|---|
| 1974–1975 | "This is a terminal contract due to enrollment trends." |
| 1975–1976 | "This is a terminal contract due to enrollment trends." |
| 1976–1977 | "This is a terminal contract." |
| 1977–1978 | (Contract is not in the record.) |
| 1978–1979 | "This is a terminal contract." |
| 1979–1980 | "This is a terminal contract due to enrollment trends." |

The last contract Sacchini accepted, for the 1979–1980 academic term, stated that she was accepting the position of "Temporary full-time Instructor of Library Science". This contract contained the following typewritten statement: "As I [Dr. Albert Watrel, the College's president] discussed with you and Dr. Larsen [the College's academic vice-president], if the enrollment does not increase this year, then next year's contract may be reduced to a ¾ or ½ teaching position."

In February of 1980 Sacchini requested that Dr. Tom Jensen, chairman of the Division of Education and Psychology at the College, initiate the tenure procedure. The Division of Education and Psychology Committee on Reviewing a Tenure Request and Dr. Jensen each recommended to the College-wide Committee on Reviewing a Tenure Request that Sacchini be granted tenure. The Collegewide Committee then recommended to Dr. Albert Watrel, as president of the College, that Sacchini be granted tenure for the 1980–1981 academic year.

On April 11, 1980, Sacchini met with Dr. Watrel, Dr. Jensen, and Dr. Larsen. They discussed the fact that Sacchini would be offered a tenured contract for the 1980–1981 term, but that she would only be offered a one-half time position. On April 29, 1980, Dr. Watrel sent Sacchini a letter regarding tenure and a half-time contract for the position of "part-time Instructor of Library Science" with tenure. The letter stated, in pertinent part:

"I am pleased to notify you that the ... [State Board of Higher Education] accepted my recommendation and authorized tenure for you in a half-time teaching position effective with the next contract period.

"However, the Board and the Commissioner of Higher Education expressed some concern about enrollment in the Library Science program at Dickinson State College and directed continued evaluation of the program. If enrollment figures do not increase in the next two years, the Library Science minor may be eliminated and the half-time teaching position retrenched."

Sacchini responded to the College's offer of employment in a letter to Dr. Watrel. Sacchini stated that she objected to the proffered half-time position and that she would accept a full-time tenured position of instructor of library science. Because Sacchini did not accept the College's offer of part-time employment, the College hired a new instructor.

Sacchini then began this action against the College. Her complaint stated that proper procedures had not been followed in granting her the half-time position which she believed was, in effect, a nonrenewal. Sacchini requested damages of $30,000.[3]

After a trial to the court at which Sacchini and Dr. Watrel testified, the trial judge delivered an oral opinion and, also, later issued written findings of fact and conclusions of law. Pertinent findings of fact and conclusion of law follow:

(Finding of Fact No. 4)

"That the rights of any one employee of any of the institutions of higher education in the State of North Dakota are established primarily, if not exclusively, by the contract of employment which the employee enters into with such institution and subject to approval thereof by the State Board of Higher Education."

(Finding of Fact No. 5)

"In this particular case, only elements of contract law are involved and only contract law is pleaded and the evidence relates to various elements and factors of contract law."

---

**3.** During trial Sacchini's attorney requested permission to amend the complaint to change the amount of requested damages from $30,000 to $800,000, and to add an alternative request for relief, that the College be required to rehire Sacchini as a full-time tenured instructor. After the trial the judge rendered an oral opinion from the bench in which he denied the part of Sacchini's motion seeking to increase the amount of requested damages and granted the part of Sacchini's motion to amend the complaint adding a request for alternative injunctive relief.

(From Oral Opinion)

"I refer to North Dakota Century Code [§] 9–07–16 which ... provides essentially that the handwritten part of a contract controls the printed part of a contract. In other words, if a form is used and the parties insert in writing any special provisions and if those special provisions are in conflict with or contradictory to the printed part of the form, then the special handwritten provisions control.... That statute, even though it has not been cited to me by either of the parties, I feel controls the decision in this case ...."

(Finding of Fact No. 15)

"That it was the intention of the parties when contracting with reference to the Plaintiff's employment for the 1979–1980 academic year, to make such contract terminal and conditioned upon enrollment trends and the next year's contract would be reduced to a three-fourths or one-half teaching position. That by the inclusion of special provisions in the contract which was executed for said term, said contract modified, altered and avoided or eliminated altogether the policies which otherwise might be applicable through the handbook and policies of the college or the State Board of Higher Education ...."

(Conclusion of Law No. 2)

"That the Plaintiff has failed to meet the burden of proof necessary to demonstrate that she had any contractual right to relief sought under the allegations of her Complaint, and the prayer for relief therefor, her contract of employment being a terminal contract which expired at the close of the 1979–1980 academic term."

Before considering the issues raised in this appeal, we will review some of the general law that is applicable. The State Board of Higher Education was created to control and administer several state educational institutions, including the College at Dickinson, North Dakota. See N.D. Const. art. VIII, § 6(1). Statements of the powers and authority of the State Board of Higher Education are found in the North Dakota Constitution and the North Dakota Century Code. See N.D. Const. art. VIII, § 6; 15–10–17, N.D.C.C. See also Zimmerman v. Minot State College, 198 N.W.2d 108, 112 (N.D.1972); Posin v. State Board of Higher Education, 86 N.W.2d 31, 35 (N.D.1957). Section 15–10–17, N.D.C.C., states that the State Board of Higher Education shall have the power to perform several enumerated duties necessary for the control and management of the State's educational institutions, including the power "To appoint and remove the ... instructors ... of the several institutions under its control, ... and to fix the terms of office and to prescribe the duties thereof ...."

The State Board of Higher Education also has the power to adopt rules and regulations for the government of the State's educational institutions. See § 15–10–17(3), N.D.C.C. Two of the College's Faculty Handbooks were accepted as exhibits in the instant case. The newer Handbook is dated July 30, 1979. One of the stated purposes of that Handbook is "to bring Dickinson State College into conformance with relevant policy and procedure statements issued over the years by the State Board of Higher Education."

In *Brady v. Bd. of Trustees of Neb. St. Colleges,* 196 Neb. 226, 242 N.W.2d 616, 619 (1976), the Nebraska Supreme Court stated:

"Courts have generally held that where a college faculty member is employed using annual reappointment forms which do not set forth in full the terms and conditions of employment, the employment policies, rules, and regulations of the college become a part of the employment contract between the college and the faculty member."

The Faculty Handbook is especially important in a case involving the tenure rights of faculty in North Dakota public colleges and universities because, unlike elementary and secondary teachers, college instructors have no statutory law to protect their employment rights. Since its 1971 amendment by the North Dakota Legislature, § 15–47–27, N.D.C.C., entitled "Time for renewal of teachers' contracts", does not apply to teachers employed by the State Board of

Higher Education. *See Zimmerman, supra* 198 N.W.2d at 112.

Although Sacchini listed six issues in her appellate brief, they can easily be combined into two issues—(1) whether or not the College was required to award Sacchini a full-time tenured position; and, (2) if not, whether or not Sacchini was given adequate notice that she would not be offered a full-time position.

■ Sacchini's application for tenure was submitted in 1980. At that time the Faculty Handbook dated July 30, 1979, had been incorporated by reference into Sacchini's contract. This Handbook includes, as Appendix I, the 1974 Board of Higher Education Regulations on Academic Freedom, Due Process, and Tenure. These regulations state that faculty appointments are either with tenure or are probationary appointments (with the exception of special appointments clearly specified as such by the institution). The regulations also state that:

"A full-time tenured appointment may be granted after four years of continuous full-time academic service to the institution (as defined by the institution),[4] but in no event shall a faculty member be retained on a full-time probationary appointment longer than six years of continuous service. If tenure is not to be granted and a sixth year contract is issued, it must be terminal."

The Faculty Handbook repeats this policy and adds the following statement: "Only employment at the college in a non-temporary (tenure track) position shall count in computing the probationary period."

Sacchini should have been aware that she could achieve tenure only in accordance with the regulations in the Faculty Handbook. One purpose of formal tenure provisions is to standardize the process of faculty selection and employment security. *See Haimowitz v. University of Nevada,* 579 F.2d 526, 528 (9th Cir.1978). *See generally* Annot., 66 A.L.R.3d 1018.

■ It is the College's contention that Sacchini was never on the "tenure track"; rather, she had successive temporary appointments which did not involve tenure credit. Nevertheless, Dr. Watrel testified that he believed he had the authority, as the College's president, to accept these non-tenure track years and to recommend that Sacchini receive tenure. Dr. Watrel did not specify any rule or regulation that granted him such authority.

The College emphasizes the fact that each of the six contracts Sacchini accepted was a "terminal contract". The phrase "terminal contract" is not defined in the Faculty Handbook. The Montana Supreme Court recently stated in *Leland v. Heywood,* 643 P.2d 578, 579 (Mont.1982):

"A 'terminal contract' is one in which the professor is hired to teach for another school year, and is then terminated. In effect, it provides the professor with more than 12 months notice of his nonretention."

Although Sacchini received "terminal contracts", we note that the 1978–1979 and 1979–1980 contracts specifically state the requirements Sacchini had to meet to be considered for tenure.

In our consideration of whether or not Sacchini was entitled to automatic full-time tenure for her seventh year, the 1980–1981 academic term, the case of *Loebeck v. Idaho State Board of Education,* 96 Idaho 459, 530 P.2d 1149 (1975), is helpful. In *Loebuck* the teacher was employed by a university for five years with five one-year contracts as a non-tenured faculty member. The contract that was offered to the teacher for the sixth year was labeled "terminal appointment". The teacher asked the court to determine that she was entitled to tenure. The trial court refused. The Idaho Supreme Court approved this determination, stating, in *Loebuck, supra* 530 P.2d at 1151:

"Nothing in the terms of the year to year contracts entered into between appellant and the University or in any state statute or university rule or policy con-

---

**4.** The Faculty Handbook defines "regular, full-time academic service" for the purpose of ten-

ure as "continuous full-time teaching in a non-temporary position".

ferred on appellant any legitimate entitlement to tenure. She had nothing more than a hope of receiving tenure. 'That hope is not a property right and the frustration of such a hope does not trigger the right to a hearing * * * ' [Citations omitted.] Although appellant had been rehired in consecutive years that did not change her nontenured status. She had only come closer to the time at which a decision had to be made as to granting or non-granting of tenure."

In the instant case, Sacchini was employed under six one-year contracts, each one labeled "terminal". Unless the College granted Sacchini tenure for the next year, she could no longer be employed by the College according to its own regulations. Instead of terminating its relationship with Sacchini, the College granted Sacchini tenure in a half-time position for the 1980–1981 year. Sacchini had the right to refuse this offer, as she did. However, nothing in the rules and regulations of the College or the State Board of Higher Education indicates that Sacchini was automatically entitled to full-time tenure for her seventh year, the 1980–1981 term.

■ Our next consideration involves the notice Sacchini received. The State Board of Higher Education regulations included in the Faculty Handbook state the following regarding "Nonrenewal of Appointment of Probationary Faculty", in pertinent part:

"In all cases, written notice that a probationary appointment is not to be renewed shall be given to the faculty member in advance of the expiration of his or her appointment . . .

. . . . .

". . . At least twelve months before the expiration of an appointment after two or more academic years of service at the institution."

Sacchini's last appointment on the College teaching faculty expired on May 30, 1980. On May 24, 1979, Sacchini was notified, in her contract for the 1979–1980 term, that: "This is a terminal contract due to enrollment trends. . . . if the enrollment does not increase this year, then next year's contract may be reduced to a ¾ or ½ teaching position." Sacchini received notice of the change in her future status as an employee of the College more than twelve months before her current appointment expired.

■ Even if Sacchini had been tenured and was being terminated based upon loss of enrollment, she still would only be entitled to written notice at least twelve months prior to the expiration of the appointment, according to the regulations in the Faculty Handbook. Dismissals based on financial exigency are impersonal and are unrelated to the views of the dismissed teacher. *See Krotkoff v. Goucher College,* 585 F.2d 675, 679–680 (4th Cir.1978); *Graney v. Board of Regents of University,* 92 Wis.2d 745, 286 N.W.2d 138, 145–147 (1979). As the Oregon Supreme Court noted in *Funston v. District School Board,* 130 Or. 82, 278 P. 1075, 1076 (1929):

"When such an employee's services must be discontinued because of the demands of economy, or by reason of a lack of pupils, the cause does not have its inception in the teacher, but arises from a source foreign to her and over which she possesses no control."

For the reasons stated in this opinion we affirm the trial court's judgment dismissing Sacchini's complaint.

ERICKSTAD, C.J., PEDERSON and SAND, JJ., and GRAFF, District Judge, concur.

GRAFF, District Judge, sitting in place of VANDE WALLE, J., disqualified.