OMLOR, APPELLEE, *v.* CLEVELAND STATE UNIVERSITY ET AL., APPELLANTS.

[Cite as Omlor *v.* Cleveland State Univ. (1989), 45 Ohio St. 3d 187.]

(No. 88-536—Submitted April 5, 1989—Decided August 30, 1989.)

""*

Friedman & Chenette, Perry R. Silverman Co., L.P.A., Jeffrey H. Friedman and Perry R. Silverman, for appellee.

Anthony J. Celebrezze, Jr., attorney general, William J. McDonald and Simon B. Karas, for appellant.

Anthony J. Celebrezze, Jr., attorney general, Edward J. Elum and Daniel J. O'Loughlin, for amici curiae, the other fourteen state universities of Ohio.

DOAN, J. The question to be here resolved is whether the trial court properly determined that there was no genuine issue of material fact that CSU was entitled to judgment as a matter of law within the standards of Civ. R. 56. We agree with the trial court.

## I

The weight of authority regarding *de facto* tenure in academic institutions supports the argument of CSU that a nontenured faculty member of a university has no entitlement to tenure on a *de facto* basis, where the university has a formal tenure system which provides that tenure may be obtained only by formal grant of such privilege. We adopt that thesis. *Scagnelli* v. *Whiting* (M.D. N.C. 1982), 554 F. Supp. 77, 79, well states the near uniform present-day rationale:

"Although tenure need not always be acquired through formal procedures, *Perry* v. *Sinderman*, 408 U.S. 593, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972), it must be based on a mutually explicit understanding of the practices or customs which give rise to the claimed entitlement. *Leis* v. *Flynt*, 439 U.S. 438, 99 S. Ct. 698, 58 L. Ed. 2d 717 (1979); *Roth* v. *Board of Regents*, 408 U.S. 564, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). *Where a university has published written procedures governing tenure, the legitimacy of a claim to tenure acquired outside those procedures is vitiated because there is no basis for mutuality. E.g., Beitzell* v. *Jeffrey*, 643 F. 2d 870 (1st. Cir. 1981); *Haimowitz* v. *University of Nevada*, 579 F. 2d 526 (9th Cir. 1978). *See, also, Sheppard* v. *Board of Regents*, 516 F. 2d 826 (4th Cir. 1975)." (Emphasis added in part.)

The Sixth Circuit Court of Appeals in *Plummer* v. *Bd. of Regents, Murray State University* (C.A. 6, 1977), 552 F. 2d 716, adopted the "published formal tenure procedures" doctrine by upholding the granting of summary judgment to a university which had a "well defined tenure system." See, also, *Wells* v. *Bd. of Regents of Murray State Univ.* (C.A. 6, 1976), 545 F. 2d 15 (determining that under a written tenure policy, tenure could be granted only by formal action of the board of trustees). The Colorado Supreme Court has held that in view of the university's formal tenure system, no contract—whether *de facto* or based on some other contract theory—could come into being absent affirmative action by the university's board of trustees. *Univ. of Colorado* v. *Silverman* (1976), 192 Colo. 75, 555 P. 2d 1155. See *Loebeck* v. *Idaho State Bd. of Edn.* (1975), 96 Idaho 459, 530 P. 2d 1149; *Rhine* v. *Internatl. Young Men's Christian Assn. College* (1959), 339 Mass. 610, 162 N.E. 2d 56.

It is obvious that a significant reason for universities to adopt formal tenure provisions is to prevent *de facto* tenure from being imposed upon them. See *McElearney* v. *Univ. of Ill. at Chicago Circle Campus* (C.A. 7, 1979), 612 F. 2d 285; *Cusumano* v. *Ratchford* (C.A. 8, 1974), 507 F. 2d 980.

Regarding the contract issue

alone, we are confronted with a matter of first impression in the instant cause. We do have pronounced law in a related matter in *Matheny* v. *Frontier Local Bd. of Edn.* (1980), 62 Ohio St. 2d 362, 16 O.O. 3d 411, 405 N.E. 2d 1041. *Matheny* involved the issue of right to continued employment of nontenured local school teachers who were working under limited yearly contracts which were not renewed. R.C. 3319.11 sets forth a formal tenure policy for Ohio school teachers which can be equated to the formal CSU Policy. The *Matheny* court held that under the legislative tenure policy, "a nontenured teacher has no expectancy of continued employment past the term of his limited contract." *Id.* at 364, 16 O.O. 3d at 412, 405 N.E. 2d at 1044. We therefore determine that the legislature's broad grant of authority to colleges and universities to create tenure policies pursuant to R.C. 3344.03 is equivalent to the policy of R.C. 3319.11, when a tenure policy is formally implemented by a college or university. It then follows that the CSU tenure Policy has the same legal status and effect as the statutory tenure system in *Matheny*, and the CSU faculty employment contracts during an employee's nontenured probationary period create no more right to continued employment than the limited contracts in *Matheny*.

We therefore conclude that in the instant matter the three contract letters indicating that a decision on tenure would be forthcoming on or before January 15, 1978 did not change the tenure rights of Omlor under the Policy. We also reject Omlor's argument that additional workload undertaken prior to appointment to faculty status changed his tenure rights. He was informed of the Policy, under which tenure could not be granted other than by its clear provisions.

Omlor accepted full-time employment of faculty status under the terms of the Policy in his fifth contract for full-time employment, and accepted the seventh contract as a "terminal contract" pursuant to the Policy. The Policy's section 8.1.2(d)(4) specifically provides that even if a timely notice of termination is not sent, the employee is entitled only to one additional annual contract. Section 8.1.2(d)(6) states:

"A member of the faculty in the rank of assistant professor who is not to be promoted to associate professor with tenure at the beginning of his or her seventh year of full-time regular service shall receive notice by the third day after the spring commencement of his or her sixth year that the contract for a seventh year is a terminal contract unless she or he is promoted during that year. Failure to send appropriate timely notice does not obligate the University to grant promotion or tenure even though the faculty member is entitled to an eighth year terminal contract according to the provisions of Section 8.1.2(d)(4) above."

## II

Our next consideration concerns what the trial court characterized as a disparaging ethnic slur uttered by Omlor. According to appellee he probably said something very similar to "I like Dean Smith, he's a good guy, for a Jew. I like about 40 percent of the Jewish people I meet."

Appellee contends, contrary to our holding *supra*, that he was a *de facto* tenured faculty member and was discharged for making the remark in violation of his constitutional right of free speech. We have determined that appellee was not tenured at the time of the remark. Further, two separate Policy-mandated review committees, comprising tenured faculty members,

unanimously recommended against tenure based on Omlor's weak scholarly research and publication record months prior to the remark. The Policy, at Section 8.1.2(b)(1)(J), states:

"* * * The President shall recommend persons lacking faculty support only in rare instances and for compelling reasons which must be stated in detail to the faculty grouping prior to making such recommendations to the Board of Trustees."

CSU's president knew of the ethnic remark but stated that his decision not to recommend Omlor for tenure was based solely on failure to meet minimum standards and failure of faculty support, not on the remark.

Assuming *arguendo* that the president of CSU did base his decision against tenure on the remark, we determine such decision to be an exercise of authorized discretion. Appellee cannot claim the remark to be constitutionally protected free speech, as the uttered words cannot in any way be construed to be a matter of legitimate public concern. See *Pickering* v. *Bd. of Edn. of Twp. High School Dist. 205, Will Cty.* (1968), 391 U.S. 563; *Givhan* v. *Western Line Consol. School Dist.* (1979), 439 U.S. 410. Thus, if the president considered such remark in his decision, he cannot be legally second-guessed.

We therefore conclude that the trial court correctly granted summary judgment under the standards enunciated in *Temple* v. *Wean United* (1977), 50 Ohio St. 2d 317, 4 O.O. 3d 466, 364 N.E. 2d 267.

Accordingly, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., HOLMES, DOUGLAS, WRIGHT and H. BROWN, JJ., concur.

SWEENEY, J., dissents.

RUPERT A. DOAN, J., of the First Appellate District, sitting for RESNICK, J.