OPINION
In 1988, plaintiff, Roger Staton, was hired by defendant, Miami University, as an Assistant Professor of Business Law, a position in which he would later be evaluated for tenure. In 1993, after a five-year probationary period, plaintiff applied for and was denied tenure by the university. Thereafter, plaintiff filed numerous complaints in both state and federal court alleging claims for age discrimination, sexual harassment, retaliation, denial of free speech, equal protection, due process, and breach of contract.[1]
In September 1994, plaintiff filed this action in the Ohio Court of Claims where he once again asserted claims of discrimination and sexual harassment, as well as breach of contract. Plaintiff's case came before the court for trial after considerable pretrial proceedings and, at the close of plaintiff's case, the court dismissed all but the plaintiff's claim for breach of contract.
On April 6, 2000, the Court of Claims issued a detailed opinion summarizing the evidence presented, its findings of fact, as well as its analysis and ruling. Therein the court found in favor of defendant in all respects. Plaintiff challenges that decision, raising the following eight assignments of error.
 [1.] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT APPLIED THE STANDARD OF FRAUD, BAD FAITH, ABUSE OF DISCRETION OR INFRINGEMENT OF CONSTITUTIONAL RIGHTS TO A BREACH OF CONTRACT ACTION.
 [2.] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FOUND THAT ONCE THE UNIVERSITY FAILED TO ABIDE BY THE AGREED PROCEDURES FOR CONSIDERING TENURE APPLICATIONS THE UNIVERSITY CURED ANY PREJUDICE.
 [3.] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT FOUND THAT THE CONTRACT DID NOT REQUIRE THAT THE UNIVERSITY READ THE RESEARCH WORKS OF APPELLANT BEFORE DENYING TENURE UNDER THE CONTRACT.
 [4.] THE TRIAL COURT ERRED IN FINDING THAT THE DETERMINATION OF THE UNIVERSITY P T COMMITTEE WAS CONSISTENT WITH THE ANNUAL REVIEWS CONTAINED IN PLAINTIFF'S TENURE APPLICATION.
 [5.] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT WHEN IT ENTERED A PROTECTIVE ORDER PROVIDING A PRIVILEGE FOR MEMBERS OF THE PROMOTION AND TENURE COMMITTEE AND PROHIBITING TESTIMONY ON THE SUBJECT OF CONTRACT BREACH.
 [6.] THE TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY EXCLUDING FROM EVIDENCE STATEMENTS MADE BY MEMBERS OF THE UNIVERSITY PROMOTION AND TENURE COMMITTEE DIRECTLY TO APPELLANT REGARDING THE TENURE DENIAL.
 [7.] THE TRIAL COURT ERRED WHEN IT FOUND THAT APPELLEE'S EMPLOYEES ARE ENTITLED TO PERSONAL IMMUNITY PURSUANT TO R.C. 2743.02(F) AND 9.86.
 [8.] [THE] TRIAL COURT ERRED TO THE PREJUDICE OF APPELLANT BY FINDING THAT THE APPELLEE HAD PROPERLY FOLLOWED ITS NEPOTISM POLICY AND DID NOT PREJUDICE APPELLANT'S APPLICATION FOR TENURE BY REMOVING THE SOLE LAW FACULTY FROM THE DEPARTMENTAL PROMOTION AND TENURE COMMITTEE.
The following facts are undisputed. Defendant's "tenure track" is a six-year process. According to the Miami University Policy and Information Manual, an individual hired into a tenure track position must teach for five years before he or she formally applies for tenure. Thereafter, during the individual's sixth year, he or she will either be granted tenure or, in the event tenure is denied, will terminate his or her employment at the end of the sixth year. This is otherwise known as the defendant's "up or out" policy.
A candidate for tenure must first submit a dossier and application to his or her department. Upon receipt, the department's faculty promotion and tenure committee reviews the candidate's application in order to make a recommendation. The members of this committee are determined by the department and, in this case, included the department chairperson, Barbara Lewis.
After receiving the report from the departmental committee, the chairperson makes a recommendation to the dean. Candidates must have a positive recommendation from either the departmental committee, or the chairperson, to qualify for further consideration. In the event a candidate receives two positive recommendations, a joint recommendation is forwarded. If the candidate receives two negative recommendations, his or her application goes no further. However, if the recommendations are divided, both are transmitted to the divisional dean.
In November 1993, eight tenured faculty members, including Chairperson Lewis, met to vote on plaintiff's application for tenure. According to Lewis, the committee had reservations about plaintiff's academic and scholarly performance. An initial vote was taken, and plaintiff's application failed by a five-to-two vote, with two abstentions. At the time of the first vote, Lewis voted against tenure. However, further discussion took place, and the committee voted a second time. The result of the second vote was four in favor, three opposed, and one abstention, Barbara Lewis.
Plaintiff's application was then considered by Lewis in her capacity as the Chairperson of the Finance Department. As chairperson, Lewis also abstained, and did not make a formal recommendation either in favor of, or against plaintiff's application. Thus, if Lewis had voted not to recommend tenure at the committee level and had given plaintiff a negative recommendation as department chair, plaintiff's application would have gone no further. However, Lewis chose to forward plaintiff's application with an accompanying letter explaining the reasons for her abstention.
Plaintiff's application was next reviewed by John Cumming, Dean of the School of Business Administration. Noting the disagreement within plaintiff's own department, Cumming spoke with tenured faculty members, including plaintiff's brother, as well as with the department's tenure and promotion committee chairperson. Despite these discussions, Cumming also felt unable to make an informed positive or negative recommendation on plaintiff's application. He therefore forwarded the application to the University Promotion and Tenure Committee ("UPT") with a letter explaining his abstention.
The UPT committee discussed plaintiff's application at length, but on January 11, 1994, voted against recommending plaintiff for tenure to the president of the university. We note that, although Cumming abstained from making a formal negative recommendation to the UPT, as a voting member of that committee, Cumming ultimately voted in favor of recommending plaintiff for tenure.
Upon being notified of the UPT's decision, plaintiff appealed that decision to the Committee on Faculty Rights and Responsibilities. The rights and responsibilities committee later concluded that plaintiff should have been notified of the letters written by Lewis and Cumming, even though plaintiff had no right to directly challenge those letters. The committee then removed the letters from plaintiff's application file and returned the file to the UPT for reconsideration. On May 11, 1994, the UPT again denied plaintiff's application based upon the resubmitted application.
In his first and second assignments of error, defendant asserts general Due Process and First Amendment claims. However, constitutional, as well as Section 1983, Title 42, U.S. Code claims, are not within the jurisdiction of the Court of Claims. Bleicher v. Univ. of CincinnatiCollege (1992), 78 Ohio App.3d 302, 306, citing Burkey v. So. OhioCorrectional Facility (1988), 38 Ohio App.3d 170, 171; and Thompson v.So. State Community College (June 15, 1989), Franklin App. No. 89AP-114, unreported, jurisdictional motion overruled by Thompson v. Southern StateCommunity College (1989), 46 Ohio St.3d 707. Moreover, due process applies to the constitutionally protected rights of life, liberty, or property, and while a tenured faculty member may have a property right to continued employment, a nontenured faculty member has no such entitlement. Logsdon v. Ohio Northern Univ. (1990), 68 Ohio App.3d 190,197. Accordingly, plaintiff's first and second assignments of error are without merit and are overruled.
In his third assignment of error, plaintiff claims the defendant failed to follow university policy when evaluating his tenure application. Specifically, plaintiff makes much of the fact that he was entitled to notice of any negative recommendation, and that he did not receive notice of the letters written by Lewis and Cumming. The fact that notice was not immediately given to plaintiff is undisputed. However, plaintiff was informed of the Lewis and Cumming letters and successfully petitioned to have those letters removed from his application file. Moreover, the UPT committee considered plaintiff's application a second time, after the letters had been removed from plaintiff's file.
In this or any other contract action, plaintiff is not entitled to a remedy unless he is able to show damage. Munoz v. Flower Hosp. (1985),30 Ohio App.3d 162, 168. However, other than accusation and innuendo, plaintiff falls short of establishing that he was denied tenure as a result of defendant's failure to immediately notify him of the letters written by Lewis and Cumming. Logsdon, supra. Accordingly, plaintiff's third assignment of error is overruled.
In his fourth assignment of error, plaintiff challenges the decision to deny him tenure as being against the manifest weight of the evidence. While plaintiff obviously believes that he deserved to be offered tenure, the question before the trial court, and this court on appeal, is not whether either court would have decided the matter differently, but whether the defendant acted fraudulently, in bad faith, or in an arbitrary and capricious manner. Bleicher, supra, at 308; and Gogate v.Ohio State Univ. (1987), 42 Ohio App.3d 220, 226.
While plaintiff may have met defendant's minimum qualifications for tenure, the evidence shows that his application was denied based upon his academic performance. Having carefully reviewed the record, we are unable to find any substantive evidence which might arguably prove that defendant acted fraudulently or maliciously when it denied plaintiff's application. For that reason, plaintiff's fourth assignment of error is also overruled.
In his fifth assignment of error, plaintiff challenges a pretrial order of the court limiting his efforts to uncover how each member of the UPT committee voted, as well as the subjective mental processes and impressions of each member who participated in plaintiff's tenure review. Plaintiff attacks the court's decision as follows:
 Once the employees of [the] university agreed to sit on the PT [UPT] Committee, they accepted a responsibility to explain to the public, the court and the affected individuals their decisions and the reasons behind them. There is no deliberative privilege in Ohio for employer based committees making decisions on employment matters. The attempt of the Court of Claims to create a new privilege specifically for is [sic] companion state agency, Miami University, is not where supported in the statutory or case law. [Plaintiff's brief at 26.]
Plaintiff's contention is unsupported and reflects a fundamental misunderstanding of the basis for the court's ruling. First, there is no support, either legally or contractually, for plaintiff's claim that defendant and the members of the UPT committee accepted a "responsibility" to open to the public the internal deliberative process employed when evaluating applications for tenure. Indeed, a cursory examination reveals that the court's ruling was based solely on the procedural guidelines of the tenure process, the same process to which plaintiff agreed when he accepted defendant's offer of "tenure track" employment. Those guidelines specifically provide that the members of the committee would not be asked, nor would they be allowed to divulge or discuss the decision making process of the UPT. As these provisions were part of plaintiff's contract with defendant, we overrule plaintiff's fifth assignment of error.
In his sixth assignment of error, plaintiff insists the court erred when it prohibited him from testifying regarding statements allegedly made to him by members of the UPT committee. The trial court held that the statements were hearsay and were thus inadmissible. Plaintiff refers to the following portion of the transcript in support of this assignment of error:
 I [plaintiff] have been told by each member of the university promotion and tenure committee as employees and as committee members and as agents of Miami University, representing Miami University, that not one of those committee members read any part of my research. * * * Not one of them was familiar — once again, they told me as employees of the university, not one of them was familiar with the research. * * * And I have been told that under sworn oath by each one of these employees of Miami University. * * *
 * * * I also have been told by these employees of Miami University that is each member of the university promotion and tenure committee who denied me tenure, that they did not disagree with the granting of tenure and the report from the departmental promotion and tenure committee, nor did they disagree with Professor Herron's assessment of the quality of my research. [Tr. II, 435-436.]
In his brief, plaintiff argues that the statements of these unnamed individuals are admissions by a party-opponent and are admissible under Evid.R. 801(D)(2). The trial court has broad discretion in the admission or exclusion of evidence, and its judgment will not be reversed absent a clear showing that it abused its discretion in a manner which materially prejudiced plaintiff. State v. Hymore (1967), 9 Ohio St.2d 122, certiorari denied, Hymore v. Ohio (1968), 390 U.S. 1024. In Rigby v.Lake Cty. (1991), 58 Ohio St.3d 269, 271, the Ohio Supreme Court explained:
 [A] trial court is vested with broad discretion in determining the admissibility of evidence in any particular case, so long as such discretion is exercised in line with the rules of procedure and evidence. The admission of relevant evidence pursuant to Evid.R. 401 rests within the sound discretion of the trial court. E.g., State v. Sage (1987), 31 Ohio St.3d 173 * * * paragraph two of the syllabus. An appellate court which reviews the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. State v. Finnerty (1989), 45 Ohio St.3d 104, 107 * * *. As this court has noted many times, the term `abuse of discretion' connotes more than an error of law; it implies that the court acted unreasonably, arbitrarily or unconscionably. E.g., Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219
* * *.
Evid.R. 801(D)(2) provides that qualifying statements or admissions against interest made by a party-opponent are not hearsay and are, therefore, not subject to exclusion under Evid.R. 802. The rule further provides that statements made by an agent or employee during the existence of the agency or employment relationship concerning a matter within the scope of the agency or employment are considered admissions by a party-opponent. Evid.R. 801(D)(2)(d).
Although plaintiff claims the trial court erred, he fails to support this claim with any citation to the record. In light of the lack of support, in addition to our own review, we are unable to conclude that the trial court acted unreasonably, arbitrarily, or unconscionably in excluding plaintiff's proffered testimony as to what certain individuals told him. Accordingly, plaintiff's sixth assignment of error is overruled.
In his seventh assignment of error, plaintiff maintains the trial court erred when it found no evidence to support his claim that Barbara Lewis and John Cumming were subject to personal liability as a result of the denial of his application for tenure. We have thoroughly reviewed the record and agree with the trial court that there is no evidence that these individuals acted in bad faith, with a malicious purpose, or in a wanton and reckless manner. Contrary to plaintiff's belief, although he may have possessed the minimum qualifications for tenure, as a nontenured faculty member, plaintiff had no entitlement to tenure on a de facto basis. See Omlor v. Cleveland State Univ. (1989), 45 Ohio St.3d 187 . More importantly, however, the mere fact that Lewis and Cumming had reservations about his qualifications, in no way proves that they acted in bad faith or with malice. Indeed, instead of stopping plaintiff's application at the departmental level, Lewis forwarded the application for further review; and Cumming, although initially uncomfortable with making a formal recommendation, ultimately voted in favor of tenure at the UPT committee meetings. Plaintiff's seventh assignment of error is, therefore, overruled.
Finally, in his eighth assignment of error, plaintiff argues the defendant breached his employment contract when it refused to allow his brother, a tenured faculty member in the same department, to participate and vote upon plaintiff's application. This claim is completely without merit.
First, to allow plaintiff's brother to participate would have been a clear violation of defendant's nepotism policy. Second, plaintiff did not call his brother to testify, and presented absolutely no evidence showing that he would have voted in favor of tenure had he been allowed to participate. Finally, and most glaringly, plaintiff's department in fact voted in favor of his tenure application. It is, therefore, inconceivable that plaintiff was prejudiced by defendant's adherence to its nepotism policy. Plaintiff's eighth assignment of error is also overruled.
For the foregoing reasons, all eight of plaintiff's assignments of error are overruled, and the judgment of the Ohio Court of Claims is affirmed.
 ___________ PETREE, J.
DESHLER and McCORMAC, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] Plaintiff has fully litigated and lost his claims brought before the Butler County Court of Common Pleas, the Twelfth District Court of Appeals, the United States District Court for the Southern District of Ohio, Western Division, and the United States Court of Appeals for the Sixth Circuit.