[No. 41879. En Banc. September 7, 1972.]

ISLAND COUNTY COMMITTEE ON ASSESSMENT RATIOS *et al.*, *Respondents*, v. THE DEPARTMENT OF REVENUE *et al.*, *Appellants*.

194

*Slade Gorton, Attorney General, Timothy R. Malone* and *Richard M. Montecucco, Assistants,* for appellants.

*Schweppe, Doolittle, Krug & Tausend,* by *David G. Knibb,* for respondents.

*Robert E. Schillberg, Prosecuting Attorney,* and *Elmer E. Johnston, Jr., Deputy,* amicus curiae.

NEILL, J.—Plaintiffs consist of individuals, an association of taxpayers, parents of schoolchildren and officials of 12 school districts in 2 counties of the state. By this action, they challenge certain statutory provisions and practices followed by the Department of Revenue and the Superintendent of Public Instruction relating to the computation of state aid to local school districts under the basic school and apportionment formula of RCW 28A.41.130. That statute reads in relevant part:

> From those funds made available by the legislature for the current use of the common schools, . . . the state superintendent of public instruction shall distribute annually as provided in RCW 28A.48.010 to each school district of the state operating a program approved by the state board of education, an amount which, when combined with the following revenues, will constitute an

equal guarantee in dollars for each weighted student enrolled, based upon one full school year of one hundred eighty days:

(1) Eighty-five percent of the amount of revenues which would be produced by a levy of fourteen mills on the assessed valuation of taxable property within the school district adjusted to twenty-five percent of true and fair value thereof as determined by the state department of revenue's indicated county ratio   .   .   .[1]

The provision of subsection 1 has been characterized by school officials as the "assumed money" deduction, since it imposes and proceeds from the assumption that local revenues are being obtained at full capacity. To the extent that 85 percent of the revenue which would have been realized by taxing property within a county at full taxing capacity based on current true and fair value exceeds the property tax revenues actually received, the deduction attributable to such difference is the "assumed money" deduction. The concern of plaintiffs is with the effect that the statutory apportionment formula has upon the amount of state school funds to be distributed. The greater the excess of the amount of revenue that could be obtained by a school district if property therein were taxed on the basis of 7 mills at 50 percent of current true and fair value and the amount actually obtained under the county's assessment practices, the greater will be the money deducted under the above statutory formula that constitutes "assumed but not actually collected revenue."

The negative impact of the statutory "assumed money" formula was diminished for purposes of 1970 allocations of

[1]The terms of subsection 1 have been adapted to 7 mills on an assessed valuation adjusted to 50 percent in conformity with *Carkonen v. Williams*, 76 Wn.2d 617, 458 P.2d 280 (1959). *See* RCW 84.52.010 and 84.52.050.

"Stated ratio" is ratio of assessed value to true and fair value. In Washington this ratio is constitutionally established at 50 percent. "Assessed value" is the stated ratio expressed in dollars. "Indicated ratio" is a measure of current accuracy of the stated ratio. It expresses the average relationship, on a given date, of the assessed value on the tax rolls to current true and fair value.

state funds to school districts by a program of the Department of Revenue whereby "ratio credits" were added to the computation. The "ratio credit" (sometimes called "bonus point") program adjusted the difference between a given county's indicated and stated ratios by means of a percentage or "weighting" factor. The program was directly tied to the policy (uniformity) and provisions of RCW 84.41 (the 4-year cyclical revaluation statute). To be eligible for "ratio credits," the program requires that counties submit to the Department of Revenue and obtain approval therefrom of a revaluation program in conformity with RCW 84.41. Thirty-two counties were eligible and received "ratio credits" for the 1970 distribution. The "weighting" factors for that year were, for each eligible county, a function of the length of that county's revaluation program and of its progress toward completion. For example, counties for which 1970 was the second year of a 4-year revaluation program were "weighted" at 50 percent, those which were at the first year of a 4-year program were "weighted" at 25 percent, and a county which was at the first year of a 3-year revaluation program would be "weighted" at 33⅓ percent. As a result of a "weighting," the indicated ratio is increased. Under RCW 28A.41.130(1), the higher the indicated ratio is for a particular county, the lower will be the deduction from and the higher will be the amount of state aid for school districts within that county.

Plaintiffs in this action contest the validity of both the "ratio credit" program and the "assumed money" deduction from state support of public schools under RCW 28A.41.130(1). The trial court enjoined the Department of Revenue's "ratio credit" program, but upheld the constitutionality of the statute.

Defendants on appeal, and plaintiffs by cross-appeal, assign error to these and other determinations of the trial court.

We deal first with defendants' assignments of error. The principal issue presented by these assignments pertains to the application by the Department of Revenue of "ratio

credits." The trial court concluded that this program was invalid because: (1) the program is without legislative authorization; (2) even if generally authorized by the legislature, the program would be invalid as based upon an unconstitutional delegation of legislative authority since the legislature failed to promulgate adequate standards; (3) even if there were sufficient authorization and legislative standards, the program would be invalid as a "rule" which had not been adopted pursuant to the rule-making procedures of the Administrative Procedure Act (RCW 34.04); and (4) the program "in its present form" is arbitrary and capricious and a denial of equal protection in that it alters the allocation of state funds on a basis having no reasonable relationship to the right or privilege of school districts and the children thereof to otherwise receive appropriated state funds.

Subsequent to the entry by the trial court of its judgment and order, and while this appeal was pending, the legislature enacted Laws of 1971, 1st Ex. Sess., ch. 288, § 10 (uncodified) which reads:

> The indicated county ratios determined by the department of revenue for 1970, as adjusted for the purposes of reflecting compliance with chapter 84.41 RCW, are hereby adopted, confirmed, and approved.

Thereupon the parties stipulated to a partial remand to permit the trial court to consider the effect of the intervening legislation. We granted the requested partial remand by order which stated in part "that the bond for costs on appeal filed by cross-appellants in this cause shall be deemed to satisfy any requirement for a similar bond in any appeal which may be taken from the trial court's decision following this partial remand." Upon remand the trial court ruled the statute unconstitutional on the same grounds of arbitrary, capricious, and unconstitutional nature stated in its original decision. Accordingly, the trial court granted plaintiffs' (cross-appellants') motion for an order confirming the injunction against use of "ratio credits."

Defendants did not file a separate notice of appeal from the trial court's action on remand. Plaintiffs now contend that this failure deprived this court of jurisdiction over the issue. Plaintiffs misread the above-quoted portion of this court's order. That portion was for the benefit of plaintiffs (cross-appellants) in that a separate cost bond would not be required should they become appellants on the issue by reason of a reversal by the trial court of its prior conclusion. It is incorrect to read the order as imposing additional procedural requirements upon the defendants, who had already perfected their appeal. The issue of "ratio credits" is properly before us, including the impact thereon of Laws of 1971, 1st Ex. Sess., ch. 288, § 10.

■ Both the injunction in the original action and the intervening statute have reference to future distribution of state school funds. The enactment of section 10 effectively cured any preexisting difficulties regarding statutory authorization and administrative rule-making procedures. The question is whether the "ratio credit" is inherently without reasonable relationship to the right or privilege of school districts to receive state funds, and therefore arbitrary, capricious and a denial of equal protection. The trial court so determined. We disagree.

■ Our constitution commands that "The legislature shall provide for a general and uniform system of public schools." Const. art. 9, § 2. The right of school districts to receive state funds derives from that constitutional mandate and from legislation enacted pursuant thereto. It is undeniable that a substantial portion of school funding in this state is obtained from local property tax revenues. We have recently upheld the constitutional requirement of uniformity in local property tax assessments. *E.g., Snohomish County Bd. of Equalization v. Department of Revenue*, 80 Wn.2d 262, 493 P.2d 1012 (1972); *Carkonen v. Williams*, 76 Wn.2d 617, 458 P.2d 280 (1969). A similar legislative recognition of the requirement of uniformity in real property taxation is expressed in RCW 84.41.010. Other provisions of that chapter establish a definite program for achieving the

required uniformity. For present purposes, the important point is that the goals and approach of RCW 84.41 are directly related to the legislature's duty to provide for a "uniform system of public schools" pursuant to article 9 of our constitution. To recognize the relationship between the requirement of uniformity in real property taxation and the constitutional requirement that the legislature provide a uniform system of schools establishes, in our view, an amply reasonable relationship between a program which effectively encourages local real property tax uniformity and the right of local school districts to receive state funds. The right of school districts to receive state funds is necessarily qualified by the constitutional mandate that the legislature provide for a system of schools that is uniform. The clear intent of RCW 84.41 is to secure uniformity in fact in an area of taxation that has a direct and major impact on school funding. It is uncontested that the clear intent of the "ratio credit" program was to induce and secure greater and more rapid compliance with the requirements of RCW 84.41. We think the mutuality of the constitutional, legislative and administrative objectives establishes the necessary relationship between the objective of the "ratio credit" program and the general right of school districts to receive appropriated state funds.

Plaintiffs also attack the wisdom and effectiveness of some particulars of the "ratio credit" program as a means of achieving uniformity. In those respects we agree with the response of the trial court in its oral opinion:

It [ratio credit] institutes [substitutes] incentive for pressure. It uses a carrot to replace pushing, and it tends to keep the Department out of a political doghouse that might arise because of the use of some of the other weapons that it has at its disposal, and interestingly enough it doesn't relieve the county assessor or the county commissioners of any pressure but now that comes from the local superintendent of schools, from the school board, the parents in the school district in the assessor's county. And it is certainly working, and the fact that within a period of a couple of years 35 counties have

embarked on that sort of a program is an indication that it is working, that it is effective, and frankly in the area of attaining uniformity it seems to me that more progress has been made in the last two years than has been made for 14 years immediately preceding.

The record discloses that the trial court's primary reason for invalidating the "ratio credit" program was a perceived lack of statutory authority and administrative procedure. As we have noted, the intervening legislation cured any such defects. As to the substantive features of the program, we conclude, for the reasons stated, that the trial court's rulings of invalidity were erroneous.

In view of our determination as to the "ratio credit" issue, we need not and do not reach the other assignments of error presented by defendants in their appeal.

■ We turn next to the issues raised by the plaintiffs' cross-appeal. The main issue here is the validity of the "assumed money" deduction contained in RCW 28A.41 .130(1). Plaintiffs agree that the purpose of the "assumed money" technique is to equalize state education support by applying an inverse relation between that support and the amount of a given school district's wealth (taxing capacity). Const. art. 9, § 2; *see Serrano v. Priest,* 5 Cal. 3d 584, 487 P.2d 1241, 96 Cal. Rptr. 601 (1971); *cf. McInnis v. Shapiro,* 293 F. Supp. 327 (N.D. Ill. 1968), *aff'd* by memo *sub nom. McInnis v. Ogilvie,* 394 U.S. 322, 22 L. Ed. 2d 308, 89 S. Ct. 1197 (1969). *See generally,* Note, 60 Ky. L.J. 156 (1971); Case Comment, 47 Notre Dame Lawyer 610 (1972); Note, 24 St. John's L. Rev. 280 (1971); Note, 24 Vand. L. Rev. 1265 (1971).

■ Plaintiffs' contention is that the "assumed money" deduction, as applied, results in an invidious discrimination. They first argue that use of the "assumed money" concept depends upon a false assumption that all property in a given county is being assessed at a uniform level since under the statute the county ratio is applied to property within each school district, and on the assumption that the same uniformity exists between counties sharing a given

school district. It is true that such an assumption would not accurately reflect the present progress toward uniformity in this state, but we do not think that such assumption is necessary to the validity of the statute. In our cases recognizing the constitutional mandate of uniformity (*e.g., Snohomish County Bd. of Equalization v. Department of Revenue, supra; Carkonen v. Williams, supra*), we were not so unrealistic as to require that complete uniformity be instantly achieved. Rather, because the requisite uniformity has been so lacking and because of the mammoth task involved in achieving such uniformity, we have upheld legislative measures designed to rectify the lack of uniformity, yet maintain taxpayer equities during the process. The "assumed money" technique, correctly viewed, is consistent with the holdings in those cases. It is part of a legislative program seeking to achieve greater uniformity and equality in the area of common school financing. The assumption applied by the statute, that counties are obtaining local revenues at a level that reflects compliance with the constitutional mandate, is clearly a means of inducing such compliance rather than an underlying premise of the statute. While it would result in more perfection to employ ratios on a school district rather than a county-wide basis in applying the statutory deduction, such perfection would be a practical impossibility within the present statewide taxing system wherein counties are the assessing units. *Carkonen v. Williams, supra.*

The "assumed money" concept, by focusing statewide on the taxing capacity available to local tax assessors rather than upon the actual efforts of those assessors, adds an important element of uniformity to the distribution of state common school aid. As such, it advances the idea of equalizing educational opportunity by giving preference to those districts having a low level of local taxing capacity. It is thereby consistent with the constitutional mandate that the legislature provide for a uniform system of public schools. Const. art. 9, § 2. Absent such treatment, the situation would be counterproductive in that increased state aid

would be forthcoming where local revenues are diminished by reason of a lack of local taxing effort. We affirm the trial court's conclusion that RCW 28A.41.130(1) is constitutional.

Plaintiffs further contend that the indicated county ratios determined by the Department of Revenue for 1970 are invalid. These ratios were computed on the basis of studies conducted by the Department of Revenue. Traditionally, these ratio studies were conducted solely with reference to warranty deed sales, but in 1969 the department expanded its surveys to include additional factors, such as sales on real estate contracts. Plaintiffs contend that the delegation of power to make ratio studies was an unconstitutional delegation of legislative authority because the legislative guidelines or standards were too broad, that the 1969 changes to include additional factors in making computations were so revolutionary as to exceed the framework of the statute, and that these changes in computation techniques amounted to a rule which was not enacted in accordance with the procedures of the Administrative Procedure Act.

The Department of Revenue is guided in this respect by the statutory duty to determine the "true and correct actual cash value of the property" in each county. RCW 84.12.350; 84.16.110; 84.48.080. Such broad guidelines are sufficiently definite where, as here, the subject matter of the delegation involves a highly technical task requiring expertise in the use of various complex techniques. *Yelle v. Bishop*, 55 Wn.2d 286, 347 P.2d 1081 (1959); *see also State ex rel. Barlow v. Kinnear*, 70 Wn.2d 482, 423 P.2d 937 (1967).

As to the contention that the expansion of the factors looked to by the department in its ratio studies were subject to the rule-making requirements of the Administrative Procedure Act (RCW 34.04), we conclude that the change in ratio study techniques did not constitute a "rule" within the meaning of the act. RCW 34.04.010 defines the term "rule" for purposes of the Administrative Procedure Act as meaning "any agency order, directive or regulation of general applicability." The additional factors employed

81 Wn.2d    p. 203, line 13      The cite "RCW 82.03.130(4)" should be "RCW 82.03.130(3)"

p. 863      The plaintiff's surname should be spelled "Andersen"

by the Department of Revenue in determining true and fair value are, in themselves, changes in the internal operations of the department and as such do not constitute an "order, directive or regulation of general applicability." Even were we to regard the department's ratio techniques as a "regulation of general applicability," the result would be the same. RCW 34.04.010(2)(i) excepts from the definition of a rule "statements concerning only the internal management of an agency and not affecting private rights or procedures available to the public." The fact that these additions to ratio study technique do not constitute a "rule" does not mean that a computation based upon such techniques is immune from challenge. *See* RCW 82.03.130(4); 82.03.140.

Plaintiffs also contend that the Superintendent of Public Instruction is required to adjust the "per pupil guarantee" to a figure which will fully disburse all appropriated state school money during each biennium. The trial court ruled:

5. The Superintendent of Public Instruction is required, pursuant to RCW Ch. 28A.41, to establish a weighted per pupil guarantee which, based upon statistical data available to him at the time the guarantee is initially set, will result to the fullest extent practicable in a distribution of funds appropriated by the legislature for that purpose. In the exercise of this authority and the duties imposed upon him by RCW Ch. 28A.41, the Superintendent should try to distribute, pursuant to the per pupil guarantee, those funds appropriated for such purpose. In establishing and maintaining this guarantee, the Superintendent may make allowances in accordance with sound accounting principles, for differences between estimates and actual receipts from local revenue sources. When the per pupil guarantee has been established and maintained in accordance with these principles, the Superintendent is not obligated to adjust the guarantee upwards at or near the end of a Biennium solely to distribute remaining appropriated balances if those balances were not reasonably foreseeable and constitute a small portion of the total amount originally appropriated, but he may do so.

Defendants do not appeal from the stated limit on the superintendent's discretion; so the question before us is

whether full disbursement of the biennial legislative appropriation is mandatory.

The basic statute relevant to this issue is RCW 28A.41.130, set forth earlier in this opinion, the provisions of which, insofar as pertinent here, were enacted in 1965. Laws of 1965, 1st Ex. Sess., ch. 171. For several prior biennia, appropriations specifically established the amount of the per district distribution under the then existing equalization formula. *E.g.*, Laws of 1959, 1st Ex. Sess., ch. 12; Laws of 1963, 1st Ex. Sess., ch. 21. Under current appropriation legislation, no fixed amount is specified. The Superintendent of Public Instruction is not subject to a legislative requirement that any express amount be distributed. The statutory and case authority cited by plaintiffs, all of which are dated prior to the 1965 change in the legislature's approach, do not contradict the superintendent's discretion in these matters.

■ The legislative acts establishing the duty of the Superintendent of Public Instruction to distribute appropriated funds (RCW 28A.41.130) and making the appropriations to meet such duty must be considered together. An appropriation of public monies by the legislature is not a mandate to spend, rather it is an authorization given by the legislature to a designated agency to use not to exceed a stated sum for specified purposes.[2] *See State ex rel. Post-Intelligencer Publishing Co. v. Lindsley*, 3 Wash. 125, 27 P. 1019 (1891); *Menz v. Coyle*, 117 N.W.2d 290 (N.D. 1962).

As the appropriation to the Superintendent of Public Instruction is only an authorization to expend public funds, we must look to his duties under the school fund distribution law (RCW 28A.41.130) to ascertain whether or not the legislature has transformed the authorization of the appropriation into a mandate to expend the full amount appro-

[2]Legislative appropriations acts customarily (though not of necessity) contain language reflecting this characteristic. *E.g.*, "the several amounts hereinafter specified, or so much thereof as shall be sufficient to accomplish the purposes designated, are hereby appropriated and authorized to be disbursed . . ." Laws of 1969, 1st Ex. Sess., ch. 282, p. 2708; Laws of 1971, 1st Ex. Sess., ch. 275, p. 1274.

priated. In our view, the language of the statute is mandatory in the sense that the superintendent is not free to arbitrarily withhold distribution to school districts. However, the variables contained in the formula, *e.g.*, the number of students, the weighting factor, and changes in local and federal revenues, make it obvious that the Superintendent of Public Instruction must have some discretion and leeway to avoid a potential deficiency in the latter months of a biennium. An underestimate of pupil enrollment or an overestimate of local revenue sources could deprive all districts of needed monies in the final months of a biennium. Thus, we affirm the trial court's conclusion that the Superintendent of Public Instruction is entrusted with sound discretion in this area.

The judgment is reversed as to the "ratio credit" program and the injunction dissolved. The judgment is otherwise affirmed.

HAMILTON, C.J., FINLEY, ROSELLINI, HUNTER, HALE, STAFFORD, and WRIGHT, JJ., concur.