683 P.2d 404

SERVICE EMPLOYEES INTERNA-
TIONAL UNION, LOCAL 6; Idaho Ser-
vice Employees Union, Local 687; Pat-
rick Delfino, William Lockwood, Bar-
bara Squires, Plaintiffs,

and

Perry Ackerman, Plaintiff-Appellant,

and

Don FRANK, each individually and on
behalf of those similarly
situated, Plaintiffs,

v.

IDAHO DEPARTMENT OF HEALTH &
WELFARE, and Thomas L. Purce, indi-
vidually and in his official capacity,
Defendants-Respondents.

No. 14547.

Supreme Court of Idaho.

April 18, 1984.

Raymond C. Givens, Coeur d'Alene, for plaintiff-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Michael R. DeAngelo, Deputy Atty. Gen., Boise, for defendants-respondents.

BAKES, Justice.

For the fiscal year commencing July 1, 1981, the budget for the Idaho Department of Health & Welfare (Department) was substantially reduced because of reduced state revenues resulting from an economic recession. Several bills approved by the legislature not only reduced the level of funding for the Department, but specifically eliminated funding for positions in regional management, central office staff, and eliminated some programs in their entirety, all of which resulted in a reorganization of the Department at a reduced level of operation. In addition, while House Concurrent Resolutions provided for 7% across-the-board salary increases for state employees, no money was appropriated for those increases, and agencies which granted increases to employees were required to eliminate positions in order to fund those increases.

Employees in high job classifications where jobs were eliminated by the legislature were allowed to elect voluntary demotions in lieu of layoffs, a procedure whereby personnel with a higher number of "retention points," points earned through merit and longevity, were allowed to accept demotion to a different position at a lower level and "bump" the employee in the lower position if he or she had fewer retention points. Appellant and several others, including labor unions representing Department employees, brought suit against the Department seeking injunctions and damages allegedly resulting from loss of merit pay increases caused by their accepting voluntary demotions in lieu of layoffs.[1] The suit, which requested certification as a class action, contained three counts. The first count alleged a violation of statutory and constitutional provisions caused by the Department's freeze on merit pay increases. The second count alleged that employees were not consulted or given notice of the reduction in force decisions, allegedly contrary to Department policy and constitutional provisions. The third count alleged a violation of statutory and Department regulations and the equal protection clause of the fourteenth amendment of the United States Constitution, allegedly caused by the forced surrender of previously earned merit pay increases.

The trial court ordered discovery deferred until after a ruling on the defendant's 12(b) motions to dismiss and motion for summary judgment had been made. The trial court subsequently granted the motion to dismiss filed under I.R.C.P. 12(b) on all elements of the complaint other than the equal protection claim. The trial judge then granted a summary judgment on the equal protection claim. Only plaintiff Per-

---

1. We do not address the question of whether the appellant may voluntarily accept a demotion in lieu of being totally laid off and nevertheless contest the demotion, since neither the district court below nor the parties here have addressed that issue.

**758**

ry Ackerman is appealing, and he is appealing only the dismissal of count three.

Through affidavits, the record contains a history of the basis for appellant's claim. The elimination of programs and positions, and the reorganization of the Department, forced by legislative cutbacks, resulted in what is referred to as the "step D" policy. Under this policy, any employee who accepted a voluntary demotion in lieu of layoff would be installed in the new position at no higher than a "step D" level at the lower grade. The "step" level of the grade at which an employee is paid is determined by merit or longevity raises. Step D is viewed by the Department as the level of solid competence within a particular job classification or grade. Levels higher than step D within a grade represent superior accomplishments over and above competence in the position. Under the "step D" policy in the reorganization plan, an employee who accepted a reduction to a lower job, in lieu of being terminated, could be classified at no higher than a step D level. Mr. Ackerman, appellant here, had been employed at grade 34 step G, and when he accepted a voluntary demotion in lieu of layoff he was reduced to grade 33 step D. This resulted in an 18% cut in pay for appellant. It is the step D plan that is challenged as a violation of regulations and statutory law, and of equal protection.

We begin by noting the rules governing our review. In considering the 12(b) motions to dismiss, the making of such a motion admits the truth of the facts alleged and all inferences reasonably drawn therefrom. *Walenta v. Mark Means Co.*, 87 Idaho 543, 394 P.2d 329 (1964). All of the facts will be considered in a light most favorable to the non-moving party. *Walenta v. Mark Means Co., supra; Hadfield v. State ex rel. Burns*, 86 Idaho 561, 388 P.2d 1018 (1963). Doubts must be resolved in favor of the survival of the complaint. *Gardner v. Hollifield*, 96 Idaho 609, 533 P.2d 730 (1975). Further, the complaint should not be dismissed under this rule unless it appears that the plaintiffs can prove no set of facts which would entitle them to relief. *Dumas v. Ropp*, 98 Idaho

61, 558 P.2d 632 (1977); *Gardner v. Hollifield, supra.*

In his first argument, appellant urges that the step D policy violated rules of the Department contained in policies and procedures manual. He argues that this manual has the force and effect of law. The question thus presented is whether the Department's manual can give rise to a cause of action because of the violation of one or more of its provisions.

The Administrative Procedures Act, I.C. §§ 67–5201 *et seq.*, sets out the procedure for the adoption of rules by administrative agencies. Subsection (g) of § 67–5203 provides that "[n]o rule hereafter adopted is valid unless adopted in substantial compliance with this section." The record is clear that the policies and procedures manual of the Department, which appellant alleges was violated by the Step D policy, was not promulgated pursuant to the procedural requirements of I.C. § 67–5203, and accordingly the trial court ruled, in dismissing counts one and two, that the manual did not have the force or effect of law, and therefore even if a violation of the procedure set out in the manual had occurred it could not be the predicate for a cause of action by appellant.

Appellant, on the other hand, reads I.C. § 67–5201(7)(A) as somehow creating an exception to the strict promulgation procedures of the APA, which he asserts provide for creation of a binding rule without meeting the procedural requirements outlined in the Act. He argues that there are two kinds of rules that have the force and effect of law, those that must be adopted according to the APA procedure and those that "because of a quirk in Idaho law" are exempted from those strict requirements. He points to subsection (7) of I.C. § 67–5201 which reads:

"(7) 'rule' means each agency statement of general applicability that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency. The term ... does not include (A) state-

ments *concerning only the internal management of any agency and not affecting private rights or procedures available to the public....*" (Emphasis added.)

Appellant misconstrues that subsection. It does not provide for two types of rules, those that must be promulgated according to I.C. § 67–5203, and those that need not. Rather, subsection (7) is a definitional term which provides that "statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public ..." are not rules. Not being rules, they do not have the force and effect of law, and a violation of them does not create a private cause of action. Subsection (7) defines "rule" to be an "agency statement of general applicability that implements, interprets, or prescribes law or policy, or describes the organization, procedure, or practice requirements of any agency." In order for such a rule to be effective it must be "adopted in substantial compliance with [I.C. § 67–5203]." The policies and procedures manual in question was not adopted pursuant to the procedural requirements of I.C. § 67–5203, and thus is not a "rule" as defined in § 67–5201(7). As such it can only validly concern "the internal management of any agency and not affecting private rights or procedures available to the public ...." Not being a "rule,". the procedures and policies manual provides only guidelines for the internal management of the Department "not affecting private rights or procedures available to the public." *See Doe v. Chang,* 58 Hawaii 94, 564 P.2d 1271 (1977) (where a similar manual was held not to be a "rule" under the Hawaiian APA, but only involved internal management of employees of the Department and their actions). *See also Emma Ah Ho v. Cobb,* 62 Hawaii 546, 617 P.2d 1208 (1980); *Island County Committee v. Dept. of Revenue,* 81 Wash.2d 193, 500 P.2d 756 (1972). The Department's agency handbook must be construed as merely an internal guideline capable of being changed by an agency head when necessary, not having the force and effect of law, and

thus not giving rise to a cause of action based on an alleged violation. Since the manual does not have the force and effect of law, no cause of action can be based on its alleged violation, and the trial court was correct in dismissing appellant's cause of action based on a violation of the manual.

Appellant also argues that the proposed reorganization violated Idaho Personnel Commission regulations and Idaho statutory law governing state employees. He asserts that these violations would give rise to a cause of action in his behalf.

·The trial court noted, in granting the motion to dismiss, that:

"This seems to be a problem which should have been challenged pursuant to the employee grievance procedure as provided for in I.C. § 67–5309A and perhaps before the Idaho Personnel Commission under I.C. § 67–5316. The same is true for the alleged violation of the Idaho Personnel Commission Rule 14–1.1 whereby allegedly the reduction in force formula was not approved by the Idaho Personnel Commission prior to its implementation."

We agree, and hold that the motions to dismiss and the motion for summary judgment were properly granted in that appellant should have taken this matter up through the appeal procedure set out in the Idaho Personnel Commission Act, I.C. §§ 67–5301 *et seq.,* which provides that agency action first be appealed to the Idaho Personnel Commission before an appeal is taken to the district court. I.C. § 67–5316(a) provides that "[a]ny classified employee who is discharged, demoted or suspended after completing his probationary period of service, may, within thirty (30) days after such discharge, demotion, or suspension, appeal to the commission for review thereof." Additionally, subsection (a) provides that "[a]ny employee in the classified service may, after exhausting the review procedures established within his department, petition the commission for review of his allocation to a particular class of position." I.C. § 67–5316(b) provides

that "[m]atters of dispute which may be brought before the commission for hearing and decision shall be limited to the discharge, reduction in rank or grade, suspensions, allocation to a particular class of any classified employee who has completed his probationary period; ...." Our prior decisions all require exhaustion of administrative remedies before seeking judicial recourse. *Williams v. State*, 95 Idaho 5, 501 P.2d 203 (1972); *Grever v. Idaho Telephone Co.*, 94 Idaho 900, 499 P.2d 1256 (1972); *State v. Concrete Processors, Inc.*, 85 Idaho 277, 379 P.2d 89 (1963). These cases adopt the doctrine of "primary jurisdiction," stating that jurisdiction lies in the administrative agency with particular expertise in the area for the initial determination, in this case the personnel commission. *Lemhi Telephone Co. v. Mountain States Tel. & Tel. Co.*, 98 Idaho 692, 571 P.2d 753 (1977); *Grever v. Idaho Telephone Co.*, supra. See also *Swisher v. State Dept. of Environmental & Community Services*, 98 Idaho 565, 569 P.2d 910 (1977) (on appeal from state personnel commission, district court may only affirm or set aside orders of commission and has no jurisdiction to take further evidence on matters not considered by the commission).

Appellant argues that exhaustion cannot be required in this case because the Idaho Personnel Commission had no jurisdiction in this matter due to a 1979 amendment to the Idaho Personnel Commission statutes, particularly I.C. § 67–5316. In 1979 the legislature amended the statute deleting the following portions.

"67–5316. PROCEDURE BEFORE THE IDAHO PERSONNEL COMMISSION. (a) Any classified employee who is discharged, demoted or suspended after completing his probationary period of service, may, within thirty (30) days after such discharge, demotion, or suspension, appeal to the commission for review thereof. Any employee in the classified service may, after exhausting the review procedures established within his department, petition the commission for review of his allocation to a particular class of position ~~or his allocation to a particular pay grade or step within a pay grade~~. Upon such review, both the employee and the appointing authority whose action is reviewed shall have the right to be heard publicly and present evidentiary facts. Such hearings shall be conducted in accordance with the procedure established by rules adopted pursuant to chapter 42, title 67, Idaho Code.

"(b) Matters of dispute which may be brought before the commission for hearing and decision shall be limited to the discharge, reduction in rank or grade, suspensions, allocation to a particular class ~~or a particular pay grade or step within pay grade~~ of any classified employee who has completed his probationary period; ...."

Appellant argues that since he contests only a change in step, not class or grade, and the above changes removed "steps" from the language of the statute, the Idaho Personnel Commission no longer has jurisdiction to consider a claim such as that alleged here. Appellant's argument fails to distinguish between the four types of actions which are appealable. I.C. § 67–5316 provides that employees may appeal to the Idaho Personnel Commission from (1) discharge, (2) reduction in rank or grade, (3) suspensions, and (4) allocation to a particular class. The stricken portions in the 1979 amendment refers only to "allocation to a particular class," and not to "discharge," "reduction in rank or grade," or "suspension." The word "allocation" is a term of art in I.C. § 67–5309B(b) referring to the action of the Department in its initial determination of the grade or step in the salary schedule to which a particular job classification shall be allocated. A reading of I.C. § 67–5316 indicates that allocation is an action entirely different from "discharge" or "reduction in rank or grade." The meaning of the word "allocation" is further amplified by a close reading of I.C. § 67–5309B which sets forth the rules by which the commission determines the worth of each job classification and makes an initial allocation of each job classification to a pay grade in the salary schedule.

Included in this statute is language governing both the initial allocation of a job classification to a particular pay grade, and the reallocation of job classifications within the salary schedule. Subsection 67–5309B(e) provides that "[i]f any employee or appointing authority believes that an error has been made in the assignment of a job classification, an appeal may be made to the personnel commission as provided in section 67–5316, Idaho Code.... Upon determination of error, the personnel commission may reassign the affected job classification to an appropriate pay grade." Thus, "allocation" under the statute is the process whereby the personnel commission determines the class, grade and step to which a particular job classification should be given.[2]

■ The conduct alleged by the appellant in this case does not fall within the term "allocation" as that term is defined in I.C. § 67–5309B. Appellant alleges that in order to prevent being discharged entirely he voluntarily elected a reduction from grade 34 step G, to grade 33 step D. Thus, the Department's action was either a "discharge" caused by the program elimination or reduced funding by the legislature, or a reduction in rank or grade within the meaning of I.C. §§ 67–5316(a) and (b), and accordingly an appeal should have been taken to the Idaho Personnel Commission. Appellant argues that he is not contesting the reduction in grade, merely the reduction from step G to step D. However, the Department action must be viewed as a whole, and not segregated into pieces. Appellant would have been discharged because of the agency reorganization. Faced with that discharge, appellant chose to assert his rights under the Idaho Personnel Commission's rules permitting him to voluntarily

elect a demotion from grade 34 step G, to grade 33 step D. The fact that appellant accepts the reduction from grade 34 to grade 33, but contests the reduction from step G to step D, does not change the fact that the agency action was to reduce him from grade 34 step G, to grade 33 step D. Accordingly, we hold that the agency action was appealable to the Idaho Personnel Commission as either a "discharge" or a "reduction in rank or grade." Appellant having failed to exhaust his administrative remedies, the district court correctly dismissed the complaint.

Our decision is further buttressed by the nature of the determinations appellant seeks to have made in this case. Appellant asserts violations of the Idaho Personnel Commission rules, and statutes dealing with the Idaho Personnel Commission and public employees. Thus, the personnel commission was the appropriate agency to make a determination of the interpretation of those rules and statutes, and should make the initial decision on whether those rules and statutes have been violated. Appellant's proper remedy was to seek review of the Department's action in the personnel commission, and the district court properly dismissed this action. *Cf. Swisher v. State Dept. of Environmental & Community Services*, 98 Idaho 565, 569 P.2d 910 (1977).

■ Appellant also alleges error in the order of the trial court denying a motion to compel discovery. Because the control of discovery is within the discretion of the trial court, there was no error in the trial court's suspension of discovery since the motion to dismiss raised purely legal issues which were capable of resolution without a complicated foray into the facts.

---

**2.** The 1949 amendment pointed out by appellant merely limited the appeal right for an alleged wrongful allocation to a particular class of positions which I.C. § 67–5302 defines as "a group of positions sufficiently similar as to the duties performed, degree of supervision exercised or required, minimum requirements of training, experience or skill, and other characteristics, that the same title, the same tests of fitness and the same schedule of compensation may be ap-

plied to each position in the group," rather than the particular pay grade or step within a pay grade of an employee. Thus, it is apparent by the amendment that the legislature intended that in allocating particular job classifications to class, grade, and step, only those actions of the agency in allocating a particular job classification to a class would be appealable, but not the allocation to a particular pay grade or step within a pay grade.

Our disposition of this case makes it unnecessary for us to address appellant's constitutional claims. Exhaustion of administrative remedies is generally required before constitutional claims are raised. *See* Davis, Administrative Law Treatise, § 26:6; *W.E.B. Dubois Clubs of America v. Clark*, 389 U.S. 309, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967).

The judgment of the trial court is affirmed. Costs to respondent. No attorney fees on appeal.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting.

## I.

The district court at one time ruled on a Rule 12(b)(6) motion that the plaintiffs had in some particulars failed to state a claim upon which relief could be granted, and as to their equal protection claim rule on it as a summary judgment motion. As the majority correctly points out, a complaint cannot be dismissed on a 12(b)(6) unless the "plaintiffs can prove no set of facts which would entitle them to relief" under their pleading, and such a dismissal is not to be lightly entered, with all doubt resolved against the movant. The district court's denial is contained in a scholarly and thorough memorandum decision.

An initial problem with the district court's decision in this case, however, is that it purports to be, and is upheld for, what it is not. As rule 12(b) states:

"If on a motion asserting the defense number (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 [summary judgments], and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56."

The district court, and this Court in turn, appear to have ruled not on the basis of plaintiffs' pleading, but on the basis of affidavits filed by the State which are said to "contain a history of the basis for appellant's claim" and which are utilized as the basis for the dismissal. Unfortunately, such are not properly considered on a 12(b)(6) motion. The district court memorandum decision will be seen as closely paralleling the affidavit of Willard Abbott, R., pp. 33–34:

"Willard Abbott, being first duly sworn, deposes and states:

"1. That he is the acting Personnel Director, Idaho Department of Health and Welfare. He has been employed in the bureau for three years.

"2. That the Department Personnel Policies and Procedures Manual (hereafter, Manual) is not promulgated as a rule under the Administration Procedures Act nor is it represented to be a rule. Changes in the Manual are accomplished by simply deleting, adding or substituting sections upon the approval of the Director.

"3. The Manual constitutes the Department's internal policies interpreting the Idaho Personnel Commission rules. It makes no attempt to set forth rights and procedures available to the public outside the agency. It's intended use is to provide guidelines to the various organization units within the Department so that relatively uniform personnel policies will be followed.

"4. A majority of the individual policies contained in the Manual are not required by Idaho Personnel Commission rules. Only those individual policies listed in Idaho Personnel Commission Rules 7, 14, and 20 are required to be filed and/or approved by the Idaho Personnel Commission. With regard to reductions in force, only the layoff formula is required to be filed and approved by the Idaho Personnel Commission. Former sections 13AA and 13BB were not part of the layoff formula."

Also filed and apparently considered by the district court was an affidavit by Thomas Purce, Director of the Department, outlining the reasons for the reorganization and giving his explanation as to why the policies had been changed and how the change was made. Appended to his affidavit was a copy of a memorandum dated May 21, 1981, which he had sent to Department heads outlining the new policy, which was made effective immediately.[1] As is provided in Rule 12(b)(6), where such affidavits are considered, the motion *shall* be treated as one for summary judgment, and here appear to have been improperly considered. Giving consideration to this evidence, the district court nevertheless denied the plaintiffs an opportunity to obtain evidence supporting their own case. When the plaintiffs submitted written interrogatories to the State, they were met with a motion for a protective order. The plaintiffs also filed a motion to compel answers to interrogatories, request for sanctions, and notice of hearing, serving a subpoena duces tecum on Mr. Purce. Following hearing on pending motions, the court refused to compel any discovery, thus precluding the plaintiffs from developing their case. On a summary judgment ruling, which in totality was what occurred, both parties are entitled to have the opportunity to obtain affidavits, take depositions, and all other evidence they can muster in support of their position. Here, however, the court entered its summary judgment ruling after having denied the plaintiffs the opportunity to support their claims. It is to be kept in mind that Idaho has adopted notice pleading. Accordingly, discovery should not be so hampered. I do not say, nor am I called upon, to even suggest that the plaintiffs are entitled to prevail on the claims stated in their complaint but only that they should have the opportunity to fortify their pleadings, especially where it appears that they may have been disadvantaged, and the defendants were not.

1. Mr. Purce's affidavit is appended hereto.

## II.

The majority finds that the Department's employee Manual "does not have the force and effect of law, [and that] no cause of action can be based on its alleged violation, and [therefore] the trial court was correct in dismissing appellant's cause of action based on a violation of the manual." The majority fails to consider this Court's unanimous decision in *Loebeck v. Idaho State Board of Education*, 96 Idaho 459, 530 P.2d 1149 (1975), cited in appellant's brief, in which this Court remanded to the trial court to determine whether an employee handbook vested any rights in the plaintiff as part of her employment contract. The employee handbook in that instance did not have the force and effect of law but nevertheless was considered by this Court as capable of vesting rights in employees: "[T]he trial court made no finding of fact regarding the applicability of the 1967 Faculty and Staff Handbook to the contract rights of the appellant. The case will be remanded to the trial court for such a finding of fact." *Id.* at 463, 530 P.2d 1149. That case suggests that a handbook need not have the force and effect of law in order to vest rights in employees. Whether the Department Manual did so would seem to be a question of fact to be determined by the trier of fact, not by the district court on a 12(b)(6) motion.

## III.

The majority determines that the Department's Manual did not constitute a rule pursuant to I.C. § 67–5203 which provides that "No rule hereafter adopted is valid unless adopted in substantial compliance with this section." The majority states that "The *record is clear* that the policies and procedures manual of the Department, which appellant alleges was violated by the Step D Policy, was not promulgated pursuant to the procedural requirements of I.C. § 67–5203." How the record can be said to be that clear on a 12(b)(6) motion is difficult to comprehend, although admittedly I may be here missing the theme of the majority

opinion. This seems to be a factual determination, where properly that which ought to be considered in passing such a motion is whether the complaint, under any reading, sets out a claim upon which relief can be granted. Whether the manual was promulgated pursuant to I.C. § 67–5203, constitutes a question of fact. When read most favorably to the plaintiffs, it should be considered that the Manual does constitute a rule and then the inquiry is whether under any set of facts, plaintiffs could possibly prevail in an action for violation thereof—not forgetting, of course, that the plaintiffs were denied the discovery which they were pursuing as a proper expansion of the pleadings, the State having not been so precluded.

The majority, having determined that the Manual was not promulgated pursuant to the Administrative Procedures Act, then makes the quantum leap (borrowing from the recent language of another Notice) in logic to declare that, not being a rule, "the procedures and policies manual provides only guidelines for the internal management of the Department 'not affecting private rights or procedures available to the public.' " If this is the error I believe it to be, and perhaps even if it is not, it is compounded by the holding that, because it is not a rule it cannot be said to affect private rights or procedures available to the public. I.C. § 67–5201 excepts from the definition of rules "statements concerning only the internal management of any agency and not affecting private rights or procedures available to the public." This is not a provision that something which is not a rule, because of improper promulgation, necessarily falls within this entirely separate exception to the definition of rule. Whether or not this is a rule, which determination should be made by the trier of fact, it seems evident that the Manual does indeed affect the private rights of the Department employees.

## IV.

I am also troubled by what appears to be a *finding,* made at this level, that because

of a declared failure of exhaustion of administrative remedies, an action in the district court cannot be brought. This issue was not raised in the State's answer to the complaint, the answer alleging but three specific defenses; (1) failure to state a claim; (2) good faith action which precludes judgment rendered against Mr. Purce in his individual capacity; and (3) reorganization was mandated by the legislature. On a reading of plaintiffs' complaint most strongly in favor of plaintiffs, the district court properly would not have considered that the plaintiffs could not come to court without having exhausted their administrative remedies, that is, unless it is clearly a question of jurisdiction which cannot be waived. As is most often the case, it is the attorneys and the district court who will invariably have a far better understanding of the controversy than an appellate court the members of which do not always find the time to peruse each and every brief as closely as might be desired. This Court, then, may be going awry, and in particular might pause to consider the following statement in appellant's brief:

> "What is especially ironic about the District Court's decision in this regard is that Mr. Ackerman *did exhaust* his administrative remedies. Even in the fact of the obvious futility of trying to resolve this matter through a grievance, Mr. Ackerman filed a grievance with the Department of Health and Welfare and processed it to its unsuccessful conclusion. This is undoubtedly why the Defendants did not raise the issue. Had it been raised by the Court at oral argument or by the Defendants, Plaintiffs could have responded. However, because the issue was never raised before the issuance of the decision, Plaintiffs never met the issue and there is nothing in the record concerning Mr. Ackerman's exhaustion."

Appellant's Brief, pp. 32–33.

In sum, if the Court is to affirm the disposition made below, it would be better done on the basis of adopting the district court's memorandum decision—but even then only if we can find ourselves per-

suaded that the denial of discovery to the plaintiffs could not in any way prejudice the plaintiffs on the defendant's motions. Dismissal without trial are generally not favored. I do not readily recollect a case from this Court upholding a dismissal where the plaintiff was denied the opportunity to, at his own expense, expand his complaint—a notice pleading only.

## APPENDIX

CASE NO. 76043

County of Ada )
             ) ss
State of Idaho )

AFFIDAVIT OF
THOMAS L. PURCE

COMES NOW Thomas L. Purce, being first duly sworn, deposes and states;

1. That he is the Director, Idaho Department of Health and Welfare.

2. That he made the final decision regarding the reorganization of the Department of Health and Welfare which occurred in May and June, 1981.

3. That the above mentioned reorganization was necessitated by various enactments of the 1981 Idaho Legislature which drastically reduced personnel funding available to the agency, reduced the number of authorized employees and underfunded employee pay increases.

4. That the primary reason for the Department policy that demoted employees would not be paid at a higher step than Step D in the new pay grade is that employees performing the same work should receive the same salary as set forth in his memorandum of May 21, 1981, which is attached and incorporated by reference.

5. That the secondary reason for the above-mentioned policy was that it would save personnel funds and therefore employee jobs. Given a finite and reduced personnel budget, the Department would have been forced to lay off additional employees to fund full salary protection for those employees who took involuntary demotions. Further layoffs would have further decreased the Department's ability to deliver its services to the citizens of Idaho.

DATED this 7th day of October, 1981.

/s/ Thomas L. Purce
Thomas L. Purce

## STATE OF IDAHO

### DEPARTMENT OF HEALTH AND WELFARE

Statehouse                           Boise, Idaho 83720

May 21, 1981

MEMORANDUM

TO:            Division Administrators, Regional Directors, Institutional Administrative Directors and All Holders of Department Personnel Policies and Procedures Manuals

FROM:       Thomas L. Purce

SUBJECT:   Policy Revision: Salary Treatment In Non-Disciplinary And Disciplinary Demotions

Effective immediately the Department's policy with regard to salary treatment for employees who are demoted to a classification with a lower entrance pay grade for non-disciplinary or disciplinary reasons is being revised to reflect that employees can-

not be given salary protection exceeding Step D of the pay grade assigned.

The decision to revise our policy was not made in undue haste and comes as a result of recommendations of the Performance Evaluation Task Force.

Under Hay System philosophy, and the pay for performance statute, the seven pay steps become a yardstick of employee performance, with Step D representing the journeyman, or fully effective working level, of the classification. The Personnel Commission is conducting their salary surveys using Step D as a benchmark for conducting their surveys. Therefore, Step D can be considered the highest attainable Step a fully competent employee can aspire to, barring unforeseen budget constraints. Steps E, F and G are therefore attainable through superior work performance.

I am committed to maintaining internal pay equity through equal pay for equal work. This concept cannot be achieved nor maintained if we continue to allow employees to demote from higher paying, more respon-sible classifications to lower paying, less responsible classifications at salaries (Step E or higher) higher than journeyman level employees in the lower classification. While I .realize the decrease in salary is unfortunate for the employee being demoted, it would be equally unfortunate for the incumbent in the lower classification to do the same work for less pay than the demoted employee, who under our former policy, could make 10–20% more pay for doing the same level of work.

INSTRUCTIONS TO HOLDERS OF DE-PARTMENT POLICIES AND PROCE-DURES MANUALS:

Remove current Page 4–6 from Chapter Four (4) of the Manual and insert attached corresponding Page 4–6.

If you have any questions contact Jerry Armstrong or Phyllis Blunck in the Bureau of Personnel.

Thomas L. Purce
Thomas L. Purce
Director

DH&W Personnel Policies and Procedures 4–6

the minimum qualifications, the employee's salary will be reduced to the grade and step that it was immediately prior to promotion.

B. Unsatisfactory service will not count for length of service credit in determining employee performance in layoff. (See Page 3–11 for policy).

20. DEMOTIONS: NON–DISCIPLI-NARY AND DISCIPLINARY

(Effective 5–21–81)

Any demotion in employment status can be an unfortunate experience, but it may happen and can be made under certain circumstances. When demotions do occur, they shall be administered uniformly and consistently according to the Department's policy. A demotion is defined as a reduction of an employee from a position he occupies in one classification to a position in another classification with a lower entrance salary in which he/she meets the minimum qualifications or has held permanent status.

POLICY

A. NON–DISCIPLINARY DEMO-TION—When an employee is demoted for non-disciplinary reasons, the employee's salary shall be adjusted to a step, *up to step D maximum*, (effective 5–21–81), within the lower pay grade with which it *most nearly* (effective 5–21–81) coincides; OR, to a lower step in the lower pay grade as agreed upon IN WRITING by the affected employee, immediate supervisor, and appropriate Division Administrator, *Regional Services Manager* (effective 5–18–81), or Institutional Administrative Director.

*This does not apply to downgrade reclassifications as a result of a classification study* (effective 5–21–81).

B. DISCIPLINARY DEMOTION—When an employee is demoted for disciplinary reasons, the employee's salary may be adjusted to a step, *up to step D maximum* (effective 5–21–81) within the lower pay grade depending upon the severity of the performance or action which gave rise to the disciplinary demotion.

C. In either case of demotion above, employees cannot be given salary protection to exceed *step D* (effective 5–21–81) for the pay grade assigned.