Dear Chief Executive Officer Mike Fogarty,
¶ 0 The Attorney General has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. May the Oklahoma Health Care Authority ("OHCA"), an agencythat receives both State and federal funds to operate theMedicaid program, pay claims from medical providers when itexhausts its monthly allocation of State-appropriated dollars?
 2. If OHCA's State appropriation is insufficient to pay theState's portion of Medicaid expenses for the rest of the fiscalyear, what must the agency do to remain in compliance with theconstitutional prohibition against deficit spending?
¶ 1 Medicaid is a federally created program designed to provide medical care for various groups in the American population, particularly low-income individuals who are children, pregnant, elderly, or blind or otherwise disabled. See 42 U.S.C. § 1396a
(a)(10)(A)(i)(III), (C)(i) (1999). Each State has the option to participate with the federal government in Medicaid or to forgo participation. Once a State chooses to provide benefits through Medicaid, Congress requires the State to provide a minimum level of benefits known generally as the mandatory program. See 42 U.S.C. § 1396a(a)(10)(A)(i) (1999);42 C.F.R. §§ 440.210, 440.220 (1999). States may also expand the program with certain options allowed by law. See 42 U.S.C. § 1396a
(a)(10)(A)(ii) (1999); 42 C.F.R. § 440.225 (1999). Oklahoma chose to participate in Medicaid; therefore, Oklahoma offers the mandatory Medicaid program through the Oklahoma Health Care Authority. See 63 O.S. Supp. 1999, §§ 5003[63-5003], 5006(A)(1). The State also offers some of the options allowed by federal law. Some of these options are chosen and implemented solely by OHCA's administrative rules; other options are required by State statute. See, e.g., 63 O.S. Supp. 1999, § 5030.1[63-5030.1](A); OAC317:30-5-240 to -248 (Supp. 1999).
¶ 2 Medicaid is an "entitlement program," meaning any person who meets eligibility requirements for medical assistance must be provided with that assistance. See Schweiker v. Gray Panthers,453 U.S. 34, 36 (1981). Both the mandatory portion of Medicaid and any options a State chooses to provide fall under the entitlement umbrella. See Doe 1-13 v. Chiles, 136 F.3d 709,714 (11th Cir. 1998).
¶ 3 According to the information you provided, Oklahoma receives approximately seventy cents from the federal government for every thirty cents the State puts into Medicaid. The federal share is paid after the State pays its share. See42 U.S.C. § 1396b(d) (1999); 31 U.S.C. § 6503(a) (1999).
 Agency Cannot Exceed Legislative Appropriation
¶ 4 A constitutional process strictly controls State expenditures. First, "[n]o money shall ever be paid out of the treasury of this State, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law[.]" Okla. Const. art. V, § 55. An agency may not spend money without this legislative appropriation. See SandSprings v. Department of Pub. Welfare, 608 P.2d 1139, 1149
(Okla. 1980). Next, an agency's appropriation must be divided into equal monthly parts, and the agency may not spend more than its monthly allocation plus any funds left over from previous months. See Okla. Const. art. X, § 23(6); 62 O.S. 1991, §§9.1[62-9.1], 10.1.
¶ 5 Oklahoma case law is silent about an executive agency's ability to spend more than its legislative appropriation, presumably because the prohibition is so clear in the State's black-letter law. States that have addressed the issue follow Oklahoma's constitutional philosophy of fiscal restraint. While an agency is not required to spend all the money the legislature appropriates to it, the agency may not spend any more than the appropriated amount. See Ellis v. City of Valdez,686 P.2d 700, 706 (Alaska 1984) (appropriation is maximum amount that may be spent); American Fed'n of State, County, and Mun. Employeesv. Olson, 338 N.W.2d 97, 103 (N.D. 1983) (appropriation provides public officials with the authority to spend the amount appropriated "and no more than the amount appropriated" for a specific purpose); Island County Comm. on Assessment Ratios v.Department of Revenue, 500 P.2d 756, 763 (Wash. 1972) (appropriation is the "authorization given by the legislature to a designated agency to use not to exceed a stated sum for specified purposes"); Leonardson v. Moon, 451 P.2d 542, 550
(Idaho 1969) (appropriation is authorization from the legislature to spend "a specified sum, and no more, for a specified purpose, and no other") (quoting Herrick v. Gallet, 204 P. 477, 478
(Idaho 1922)).
¶ 6 An agency may not spend more than it is appropriated by the legislature. That appropriation cannot be spent more quickly than the accumulated allocation provided by statutory and constitutional provisions. The answer, therefore, to your question whether OHCA may spend money when it exhausts its monthly allocation of State dollars, is the agency cannot spend more than the current month's allocation plus any funds left over from previous months' allocations.[1]
 Actions to Remain in Compliance with Expenditure Limits
¶ 7 The initial question in determining what to do when either a monthly allocation or an entire appropriation is exhausted, is whether an agency or some other executive branch official may transfer money from another account to the depleted account. In the event of natural disasters and other unforeseen emergencies, the Governor may allocate money from the State Emergency Fund to alleviate the crisis. See 62 O.S. 1991 and Supp. 1999, §§139.42-139.49. To obtain these funds, the agency must present written findings of fact to the Governor explaining the nature of the emergency and stating why the emergency was not foreseeable by the legislature. See 62 O.S. 1991, § 139.46[62-139.46]. Before the Governor may allocate funds for an emergency that does not arise from a natural disaster, the Contingency Review Board must agree that the situation constitutes an emergency not foreseeable by the legislature.[2] See 62 O.S. 1991, § 139.48[62-139.48](1).
¶ 8 Executive reallocation of appropriated funds outside this procedure is prohibited. See Detroit City Council v. Mayor ofDetroit, 537 N.W.2d 177, 183-84 (Mich. 1995) (reallocation of funds from one appropriated account to another is improper without legislative action); City Council of Boston v. City ofBoston, 434 N.E.2d 1250, 1256 (Mass. 1982) (executive cannot simply transfer money from one appropriated account to another without violating the legislative power of the purse); IslandCounty Comm., 500 P.2d at 763 (funds are appropriated for a specified purpose and no other); Leonardson, 451 P.2d at 550 (appropriation is authorization from legislature to spend a "specified sum, and no more, for a specified purpose, and no other").
¶ 9 If the State Emergency Fund is not available or is insufficient for the Medicaid program's needs, then OHCA must prepare to take more drastic measures. The Medicaid Act does not impose an obligation on the State to provide medical services.See Stowell v. Ives, 976 F.2d 65, 69 (1st Cir. 1992). However, once the State opts into the program, the State must provide all mandatory health care coverage benefits without picking and choosing among them. See Rush v. Parham,440 F. Supp. 383, 391 (N.D. Ga. 1977) rev'd on other grounds,625 F.2d 1150 (5th Cir. 1980); 42 U.S.C. §§ 1396a(a)(10)(B),1396d(a)(1)-(27) (1999). It must cover all eligible individuals alike. See 42 U.S.C. § 1396a(a)(10)(B) (1999). It must submit to federal demands to pay the State's share. See Smith v.Miller, 665 F.2d 172, 175 (7th Cir. 1981). The same is true once the State opts into any portion of the optional health care coverages.
¶ 10 State law that conflicts with these requirements-including a State constitutional provision-is preempted. See Dalton v.Little Rock Family Planning Serv., 516 U.S. 474, 477 (1996). This preemption exists, however, only so long as the State accepts federal funds for the program. Once the State elects to forgo federal funding because of constitutional limitations, the preemption no longer exists, and the federal mandates are abolished. See Smith, 665 F.2d at 175; Dalton,516 U.S. at 477. The State cannot be required to spend money it does not have when it gives up its claim on federal dollars. See Dowling v.Davis, 840 F. Supp. 731, 735 (E.D. Cal. 1992).
¶ 11 Because the federal government requires the State to pay its money first before receiving the federal share, when OHCA runs out of State funds for the Medicaid program, it must forgo federal funding. This rejection of federal funds may occur in a two-step process. As the first step in a financial shortfall, the State must discontinue spending on optional portions of the Medicaid program. These portions are completely optional with the State. See 42 C.F.R. § 440.225 (1999). It appears the State may eliminate some optional programs but not all of them, so long as the State halts each option for all eligible recipients rather than stopping the program for one class of persons but not for another. See 42 U.S.C. § 1396a(a)(10)(B) (1999). If abandonment of optional programs is not enough to overcome the appropriations shortfall, the State must eliminate the entire Medicaid program for so long as money is insufficient. The State may not choose to cover some recipients required by law to be covered while dropping other equally qualified recipients. See id. The State may not choose to provide part of the mandatory program for all Medicaid recipients but omit other parts of the mandatory program. See 42 U.S.C. § 1396a(a)(10)(A)(i) (1999).
¶ 12 That the Oklahoma Legislature has determined the State should participate in the Medicaid program (see 63 O.S. Supp. 1999, §§ 5004-5052[63-5004-5052]) does not prevent OHCA from forgoing federal funds when State dollars expire. Every statute directing an agency to provide services is read with the proviso "subject to appropriation." See S.I. v. New Jersey Div. of Dev.Disabilities, 626 A.2d 466, 473 (N.J.Super.Ct. App. Div. 1993) (citing Petition of Strandell, 562 A.2d 173 (N.H. 1989)) (right to services is impliedly conditional upon sufficient legislative appropriation); and Town of Milton v. Commonwealth,623 N.E.2d 482, 484 (Mass. 1993) (right to receipt of money depends on availability of funds appropriated for the purpose). If State appropriations are not sufficient to fund the program, then it must cease.
¶ 13 Typically, an agency makes such fundamental changes in a program affecting the public through rulemaking under the Administrative Procedures Act. See 75 O.S. 1991 and Supp.1999, §§ 250-324. OHCA should attempt to follow the procedures established by the APA for emergency rules and permanent rules; however, because of the constitutional nature of the prohibition against spending more money than is appropriated, the agency may not allow the timelines or approvals required by the APA to cause it to overspend its budget. If the deadlines cannot be met or the approvals by the Governor and legislature cannot be obtained, OHCA must stop the Medicaid program when funds are depleted.[3]
 Due Process Considerations
¶ 14 As an entitlement program, Medicaid creates a "property" interest in recipients which typically cannot be affected without adherence to due process. See Atkins v. Parker, 472 U.S. 115,128 (1985). That property interest exists only so long as the program itself exists. When the entire program is cancelled, due process is not violated by the absence of individual hearings which otherwise might have been necessary to terminate a recipient's participation in Medicaid. See Dowling,840 F. Supp. at 735. The legislative process that determines funding issues is sufficient due process in such situation. See id.; seealso Atkins, 472 U.S. at 129-30 (in social welfare arena, legislative decision making provides sufficient due process for benefit reduction); Youakim v. McDonald, 926 F. Supp. 719, 732
(N.D. Ill. 1995) (legislative process is sufficient due process for mass welfare benefit reduction). In addition, federal regulations specifically provide that when Medicaid benefits are adversely affected because of State law requiring an automatic change for some or all recipients, individual hearings are not necessary. See 42 C.F.R. § 431.220(b) (1999). The legislative process that decided the appropriate State funding level provided the required level of due process, and OHCA may act without conducting individual hearings for each recipient.
¶ 15 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. Pursuant to Okla. Const. art. V, § 55, art. X, § 23(6),and 62 O.S. 1991, §§ 9.1(A), 10.1, the Oklahoma Health CareAuthority (OHCA) may not operate the Medicaid program when theagency exhausts its monthly allocation of State-appropriateddollars unless OHCA receives an emergency allocation from theState Emergency Fund sufficient to operate the program.
 2. If OHCA's State appropriation and any allocation from theState Emergency Fund are insufficient to pay the State's portionof Medicaid expenses for the rest of the fiscal year, to complywith the constitutional prohibition against deficit spendingfound at Okla. Const. art. X, § 23, the agency must stopreceiving federal Medicaid funds and halt the program.
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
ANDREW TEVINGTON ASSISTANT ATTORNEY GENERAL
[1] This answer assumes any remaining allocated funds from previous months have not lapsed pursuant to the two-and-one-half year provision in Okla. Const. art. V, § 55, or any law specific to that appropriation.
[2] A unique executive-legislative entity, the Contingency Review Board is also empowered to reallocate amounts appropriated for wages and salaries during emergencies. See 74 O.S. 1991 andSupp. 1999, §§ 3601-3605, as amended. The issue here is not related to employee compensation, which for OHCA is appropriated separately from Medicaid program funds. See 1999 Okla. Sess. Laws, ch. 247, § 2.
[3] If approval of rules halting the program is denied because the legislative process has provided additional appropriations, then, obviously, the program must continue.